## William Butler *vs.* George A. Rahm.

*Various questions arising under a Mortgage by a Railroad Company; touching among other things, its construction, validity and effect—Assignee of judgment affected by same equities as the assignor—Priority of mortgage over judgment recovered before its registration—Injunction—Sale of hypothecated bonds without previous notice of sale—Equitable Mortgage.*

Case where mortgage bonds of a railroad company, dated on the 1st of October, 1871, were held to be embraced in a deed of mortgage, dated October 25th, 1871, the bonds being in other respects clearly described in the deed, and there being nothing in the terms of the deed inconsistent with the fact that they had been before executed.

In the same case, it was held, also, that if any doubt or ambiguity could arise on this subject, it was removed by parol evidence that no other bonds were executed or issued by the company except those dated on the 1st of October, 1871.

The real consideration for the mortgage being a security for the payment of said bonds, issued in conformity with a resolution of the company, it was Held :

1st. That such consideration was sufficient.

2nd. That there could be no possible objection to the deed being made to third persons as trustees for the benefit of the bondholders.

3rd. That such deed being in effect a contract between the company and all persons who might become holders of the bonds thereby secured, they were entitled to the same benefit as if they were parties to the deed.

The charter authorized the company to pledge "its property and profits." The deed of mortgage conveyed "all the present and future to be acquired property of the company, and all its estates and *franchises*, that is to say :" and then followed an enumeration of the property and rights intended to be conveyed. Held :

1st. That this enumeration limited and explained the previous words, and brought the terms of the deed within the limits of the legislative authority.

2nd. That if it were construed otherwise as intending to convey the franchise to be a corporation, while in that respect it would be inoperative, it would not for that reason be entirely void, but would operate to convey the property of the company.

The deed contained the following provision, "but nothing herein contained shall prevent the said company before default in the payment of any of the said bonds or the interest due thereon, from selling, hypothecating or otherwise disposing of any of their said property, real or personal, not necessary in their judgment for the use of the said road, nor from collecting and applying any money due to the said company from any source whatever, provided said application shall not be to the prejudice of any holder of any of the said bonds." HELD:

1st. That however suspicious the power here given might be in the case of a mortgage of ordinary goods, the very nature of its business, the means and power necessary to keep it up, the wear and tear of its iron, ties, and rolling stock, the constant necessity of replacing injured or worn-out appurtenances with new, forbade the inference of a fraudulent purpose which might arise from such a provision under other circumstances.

2nd. That while it is well settled that a party cannot convey subsequently to be acquired goods, so as to give the mortgagee a legal title thereto, or a legal right of action against a party seizing them, yet such a conveyance creates in equity a valid lien upon property subsequently acquired.

After the mortgage was executed, but before it was recorded in Somerset County, a judgment was recovered in the Circuit Court of that County against the mortgagor by the N. I. Company, which had notice of the mortgage as soon as it was executed. This judgment was afterwards assigned to B., who caused execution to be issued upon it. On a bill filed by the holder of some of the mortgage bonds against the assignee of the judgment for an injunction to restrain the execution, it was HELD:

1st. That B. claiming as assignee of the judgment acquired only the rights held by the N. I. Company.

2nd. That as the N. I. Company had notice of the mortgage when the debt was contracted, and before the judgment was recovered, it must be postponed to the mortgage creditors, and it was immaterial that the mortgage was not recorded in Somerset County before the judgment was recovered.

3rd. That B. as assignee took subject to all the equities affecting the original plaintiff in the judgment.

When the original bill was filed and the injunction issued, the complainants' title to the bonds rested only on the allegation in the bill, that he "had come into possession of them, and now holds and owns the same." HELD:

That the Court might with propriety have refused to grant the injunction, for the want of sufficient proof to support the same. But this objection could not be urged in support of a motion to dissolve, the requisite proof having been supplied meanwhile by the production of five of the bonds and all of the overdue *coupons*.

The bonds in question had been hypothecated by the N. I. Co. as collateral security for the payment of certain discounted notes. The bonds were afterwards sold at public auction under the direction of the pledgee, default having been made in paying the notes; and the purchaser sold them to the complainant. The officers of the N. I. Co. were present at the sale, and no objection to the sale was made by that company, or by the railroad company. HELD:

1st. That the defendant claiming only under the N. I. Co. could not be heard to object to the validity of the sale on the ground of no previous notice having been given to the N. I. Co.

2nd. That in the absence of evidence to the contrary, the proceedings under which the bonds were sold would be presumed to have been regular.

3rd. That the possession of the bonds and *coupons* by the complainant, and their production in the cause was sufficient to give him a standing in Court and entitle him to relief.

4th. That it was not a valid objection that some of the bonds had been pledged by him to other persons as collateral security; he not having lost thereby his title as owner, and being entitled to maintain the suit for himself and all others having an interest as bondholders.

5th. That the complainant being a bondholder entitled to priority over the judgment creditor, was entitled to a continuance of the injunction.

APPEAL from the Circuit Court for Somerset County, in Equity.

The case is sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER and ALVEY, J.

*John W. Crisfield* for the appellant.

*Henry Page* for the appellee.

BARTOL, C. J., delivered the opinion of the Court,

This is an appeal from an order of the Circuit Court for Somerset County, continuing an injunction which had been issued at the instance of the appellee, complainant below, restraining the appellant from enforcing an execution upon a judgment recovered by " the National Iron Company " against " the Worcester and Somerset Railroad Company " which had been assigned to the appellant.

The bill alleges that the W. & S. Railroad Co. was duly authorized by its charter (Act of 1867, ch. 322, sec 15,) to issue bonds and pledge the property and profits of the company to secure their payment; that in pursuance of this power, and of the resolution of the board of directors, the railroad company issued its bonds to the amount of $50,000, and to secure their payment with the interest thereon, executed the mortgage dated October 25th 1871 to Felton, Franklin and Clarke, trustees. These bonds, it is alleged in the bill, are now held and owned by the appellee.

The proof shows that the railroad company in the latter part of the summer of 1871, contracted with the " National Iron Company ", a Pennsylvania corporation, for the purchase of a quantity of iron, for the purpose of constructing its road, amounting to about $45,000. $2000 of which was, by the contract, to be paid in cash, and for the balance the railroad company was to give its promissory notes at twelve and fifteen months, these notes to be secured by an issue of $50,000 in "*first mortgage bonds*" as collateral security.

The iron was delivered under the contract, and the railroad company paid $10,000 in cash on the 27th day of September 1871, and executed its four promissory notes dated October 1st 1871 as follows: One at forty-five days for $5000, one at ninety days for $5000, and two for $12,500 each, payable one in twelve months, and one in fifteen months. To secure the payment of the

last two notes, the railroad company delivered to the National Iron Company its bonds amounting to $50,000, dated October 1st, 1871, secured by the mortgage of October 25th, 1871. It appears from the proof the promissory note for $5000, payable in ninety days, not being paid at maturity, was renewed on the 12th day of February 1872, by a note of that date for the same amount payable in four months. Upon this note suit was instituted by the N. I. Co., and a judgment was confessed thereon by the railroad company on the 18th day of October 1872, for $5104.81.

The N. I. Co. having become bankrupt, this judgment was on the 23d day of July 1874, assigned to the appellant by Andrew H. Dill the assignee in bankruptcy, and a writ of *fi. fa.* was issued thereon on the 1st day of September 1874 and levied upon the property of the railroad company. To restrain this execution the injunction in the present case was issued; and upon the hearing of the motion to dissolve, on the pleading and proofs, the Circuit Court overruled the motion and continued the injunction. The propriety of the Court's action in this respect, is the only question presented by this appeal. Other judgment creditors were made defendants, and were also enjoined, but their rights are not now involved.

The claim of the appellee to relief is based upon the deed of mortgage to Felton, Franklin and Clarke, and depends mainly upon the solution of the following questions:

1st. Is the deed valid and effectual to secure the holders of the bonds dated October 1st, 1871?

2nd. Are the rights of the appellant as assignee of the judgment to be postponed to the rights of the bond holders?

3rd. Is the appellee a bondholder entitled to relief by injunction?

1st. As to the mortgage, its validity, legal operation and effect. It was executed on the 25th day of October

35                    v. 46.

1871, and the appellant's solicitor construes it as referring to bonds thereafter to be issued, the bonds offered in proof are dated October 1st, 1871. But it clearly appears from the evidence that these are the bonds referred to in the deed and intended to be secured thereby. This appears from an inspection of the papers; the bonds correspond in all respects with those described in the recital in the deed, and declare on their face that they are secured by a first mortgage in which Felton, Franklin and Clarke, are the trustees. There is nothing in the terms of the deed inconsistent with the fact that the bonds had before been executed. But if any doubt or ambiguity could arise on this subject, it is removed by the testimony of *Dr. McMasters*, the president of the company, that no other bonds were executed or issued except those dated on the first day of October 1871, and these we think are clearly described in the deed.

It has been contended on the part of the appellant that the mortgage evidences no valid or binding contract, that it is a mere voluntary contract on the part of the company without consideration which a Court of equity will not enforce. This objection, in our opinion, is not well founded. ·It appears to be based on a misconstruction of the deed, taking as the consideration the recital it contains of the resolution of the board authorizing the bonds to be executed, and treating this suit as a proceeding to compel the company to carry out the resolution; whereas the real consideration is a security for the payment of the bonds of the company issued in conformity with the resolution. Though the deed does not state in terms, that the bonds had been executed, such is the plain inference from its provisions, and the fact is shown to be so. The object of the mortgage was to enable the company to dispose of its bonds advantageously in the market, by giving to the holders the security of a pledge of its property and profits. There can be no possible objection to the deed being made

to third persons as trustees for the benefit of the bond-holders. It is in effect a contract between the company and all persons who might become holders of the bonds thereby secured, and they are entitled to the same benefit as if they were parties to the deed.

Several objections have been made to the provisions of the deed, which will be briefly noticed.

It is said the deed is void because it attempts to convey the *franchises* of the company, which are inalienable without the Legislative sanction.

The charter authorized the company to pledge " *its property and profits.* " We think the deed by a reasonable construction does no more, it conveys " all the present and future to be acquired property of the company and all its estate and franchises, that is to say," and then follows an enumeration of the property and rights intended to be conveyed. This enumeration limits and explains the previous words, and brings the terms of the deed within the limits of the legislative authority. But if it were construed otherwise, as intending to convey the franchise to be a corporation, while in that respect it would be inoperative, it is not for that reason entirely void, but operates to convey the property of the company.

The deed contains the following provision, " but nothing herein contained shall prevent the said company, before default in the payment of any of the said bonds, or the interest due thereon, from selling, hypothecating, or otherwise disposing of any of their said property, real or personal, not necessary in their judgment for the use of the said road, nor from collecting and applying any money due to the said company from any source whatever, provided said application shall not be to the prejudice of any holder of any of the said bonds."

This provision it is contended is fraudulent, and invalidates the deed. In answer to this objection we fully concur in the opinion of the learned Judge of the Circuit

Court, and cannot do better than to repeat what has been so well said by him : " However suspicious the power here given might be in the case of a mortgage of ordinary goods, the very nature of this corporation, its business, the means and power necessary to keep it up, the wear and tear of its iron, ties and rolling stock, the constant necessity of replacing injured or worn out appurtenances with new, forbids the inference of a fraudulent purpose, which might arise from such a provision under other circumstances. The power retained is manifestly in the interest of the mortgagees, and is restricted by express language to be exercised in such manner as not to prejudice in any manner the rights of the bondholders. If the provision is in the interest of the bondholders, as it transparently is, it is also for the same reasons in the interest of the other creditors, and cannot be regarded as fraudulent."

We refer also on this point to the opinion of the late Judge STORER in *Ludlow vs. Hurd*, 1 *Disney*, 552, 561, 562, cited by the Judge of the Circuit Court.

It is next objected that the mortgage attempts to convey "*future to be acquired property*," but this objection is not tenable.

While it is well settled that a party cannot convey subsequently to be acquired goods, so as to give the mortgagee a legal title thereto, or a legal right of action against a party seizing them, as was decided in *Hamilton & Robinson vs. Rogers*, 8 *Md.*, 301, yet it has frequently been decided that such a conveyance creates in equity a valid lien upon property subsequently acquired. Many cases might be cited, we refer only to *Seymour vs. Canandaigua Falls R. R. Co.*, 25 *Barbour*, 285 ; *Morrill vs. Noyes*, 56 *Maine*, 458 ; *P., W. & B. R. R. Co. vs. Woelpper*, 64 *Pa. R.*, 366 ; and *Pennock, et al. vs. Coe*, 23 *Howard*, 117. The mortgage is, in our judgment, free from objection in its terms and provisions, it was made with the Legislative sanction, and appears to be in all respects such

a contract as was contemplated and authorized by the charter of the company.

2d. There can be no doubt of the privity of the lien of the bondholders, over that acquired by the appellant under the judgment. In disposing of this question it is immaterial to consider the effect of the decree authorizing the mortgage to be recorded in Somerset County. The appellant claiming as assignee acquired only the rights held by the National Iron Company. The proof shows conclusively that the N. I. Co. had notice of the mortgage as soon as it was executed. It was a part of the contract with that company, that the bonds should be issued and the mortgage executed to secure a portion of its debt, it was to that company the bonds were actually delivered, in fulfilment of the contract. It is therefore wholly immaterial that the mortgage was not recorded in Somerset County, till after the judgment was recovered. The N. I. Co. having notice of the mortgage when the debt was contracted and before the judgment was recovered must be postponed to the mortgage creditors; *Johnson vs. Canby,* 29 *Md.,* 211 ; *Carson vs. Vickery,* 40 *Md.,* 73 ; and the appellant as assignee, takes subject to all the equities affecting the original plaintiff in the judgment.

3d. When the original bill was filed and the injunction issued, the appellee's title to the bonds rested only on the allegation in the bill that he "had come into possession of them and now holds and owns the same." The Court might with propriety have refused to grant the injunction for the want of sufficient proof to support the allegation. But this objection cannot now be urged in support of the motion to dissolve ; because the requisite proof has been supplied by the production of five of the bonds, and all the overdue *coupons.* But the title and ownership of the appellee is denied. It appears from the testimony that the "National Iron Company" procured the two promissory notes of the W. & S. Railroad Co. for $12,500, before

mentioned, to be discounted by the "Scranton Savings Fund and Trust Company" and hypothecated the railroad bonds as collateral security. These were afterwards sold at public auction, under the direction of the Trust Company, default having been made in paying the notes, and were purchased by William Painter, the witness, and were sold by him to the appellee. It is objected that the bonds having been held only as a pledge, could not be thus legally disposed of by the Trust Company, without notice to the Iron Company. The proof shows that the officers of the Iron Company were present at the sale, Painter the president, Cravelin the vice-president, and Welsh the treasurer, and that no objection to the sale was then made by the Iron Company ; nor has any objection ever been made by that company ; or by the railroad company ; and the appellant claiming only under the Iron Company cannot be heard to object. In the absence of proof to the contrary the proceedings under which the bonds were sold will be presumed to have been regular ; at all events the appellant is not in a position to question it. The possession of the bonds and *coupons* by the appellee, and their production in the cause is sufficient to give him a standing in Court, and to entitle him to relief. It is no valid ground of objection that some of the bonds have been pledged by him to other persons as collateral security, he has not thereby lost his title as owner, and is entitled to maintain this point for himself and all others having an interest as bondholders. *Mason vs. York & Cumberland Railroad Co.*, 52 *Maine*, 82 ; *Williamson, Trustee vs. New Albany & Salem R. Co.*, cited in 2 *Redfield on Railways*, 486, *note.*

The appellee being a bondholder, entitled to priority over the judgment creditor, there can be no question of the propriety of continuing the injunction. His right to this relief is shown by the cases before cited, especially by *Coe vs. Pennock* ; *Mason vs. York & Cumberland R. Co.* ; *Philadelphia, W. & B. R. Co. vs. Woelpper* ; *Ludlow vs. Hurd*, and *State vs. N. C. R. Co.*, 18 *Md*, 193.

The exception to the bill as *multifarious* cannot be supported; this objection has not been made at the proper time nor in the proper form ; but however made, the bill is not in our judgment, obnoxious to this objection.

The ruling of the Circuit Court upon the several exceptions of the appellant to the testimony are affirmed.   We shall affirm the order, continuing the injunction, and remand the cause.

<div align="right">

*Affirmed, and*
*cause remanded.*

