(Decided 14th March, 1894.)

---

The First National Bank of Baltimore *vs.* August W. Lindenstruth, and others.

*Mortgage of Stock in Trade—After-acquired Property.*

A provision in a mortgage of a stock of goods that all stock replaced after the sale of any of the stock, shall be substituted for the stock originally covered thereby, while not, of itself, rendering the mortgage void, as fraudulent, is, at law, a nullity, and creates no lien on after-acquired goods.

Where, with the knowledge of the mortgagee, and for its benefit, the after-acquired goods have been so intermingled with the property embraced in the mortgage as not to be distinguishable from the latter, a judgment creditor of the mortgagor may lawfully levy upon and sell the whole, or so much thereof as may be necessary to satisfy his debt.

NOTE.—The efficacy of a mortgage on articles to be subsequently acquired, is the subject of a very full note to *Deeley vs. Dwight,* (*N. Y.*) 18 *L. R. A.,* 298.

APPEAL from the Circuit Court No. 2 of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, ROBERTS, MCSHERRY, BOYD and BRISCOE, J.

*Alexander Preston,* and *J. Alexander Preston,* for the appellant.

*Thomas C. Weeks,* for the appellee, the Brewing Company.

*C. Dodd McFarland,* (with whom was *Peter J. Campbell,* on the brief,) for the appellees, Lindenstruth and the Baltimore Savings Institution.

MCSHERRY, J., delivered the opinion of the Court.

On August the twentieth, eighteen hundred and ninety, Lindenstruth borrowed five thousand and five hundred dollars in cash from The George Bauernschmidt Brewing Company of Baltimore, and at the same time, and to secure the repayment of the loan, executed and delivered to the lender a mortgage conveying both real and personal property, and likewise all of the mortgagor's " stock in trade, such as whiskies, brandies, wines, liquors of any sort and description." Amongst other things, the mortgage contained the following provision: " And it is hereby expressly understood that all stock and goods hereby granted shall be held liable for the said sum of five thousand five hundred dollars, and the interest thereon, until paid; and that all stock of goods replaced after the sale of any or all of the stock, goods, merchandise, and other property hereby granted, shall be substituted for those hereby granted, and the debt hereby secured

shall be a lien upon all of said stock or goods now on hand or substituted for the stock, goods and other property granted." In November, eighteen hundred and ninety-two, the First National Bank of Baltimore obtained a judgment against Lindenstruth upon a cause of action which existed prior to the execution of the mortgage. A *fi. fa.* was issued on this judgment, and was returned *nulla bona*, and shortly thereafter the bank filed a bill of complaint in Circuit Court No. 2 of Baltimore City, alleging that Lindenstruth was largely indebted, that he was without the means to pay his debts apart from the property covered by the mortgage; that the conveyance was made to hinder, delay and defraud his creditors, and that it contained provisions which were utterly void. Later on an amended bill was filed charging in addition to the averments of the original bill that the mortgage had, in fact, hindered, delayed and prevented the plaintiff from collecting its judgment, and further, that the property was more than sufficient to pay the mortgage debt and the plaintiff's claim. It also charged that some of the goods and stock conveyed by the mortgage had been sold and replaced by other goods and stock, and that these latter had been so mixed and intermingled with those covered by the mortgage that they could not be identified, or distinguished from the goods and stock originally transferred by the mortgage. The relief prayed was that the mortgage might be set aside; that a receiver might be appointed; that the mortgaged property might be sold, and that the claim of the plaintiff might be paid after the debt secured by the mortgage had been first satisfied. There was likewise a prayer for general relief. A demurrer was interposed to the amended bill, but was overruled, and the answers previously filed to the original bill were adopted as answers to the amended bill. Testimony was taken, and upon final hearing the Court (WICKES, J.) dismissed the bill of complaint, with costs; and from that decree this appeal was taken.

. The testimony shows, beyond a cavil or a doubt, that the cash was actually loaned by the Brewing Company to Lindenstruth in absolute good faith, when the mortgage was executed; and there is nothing whatever in the record even suggestive of a suspicion that the mortgagor and mortgagee combined or confederated to defraud any creditor of Lindenstruth. Indeed, it was not pretended in the discussion at the bar that there was any evidence of actual fraud apart from that which it was insisted the provisions of the mortgage disclosed. These provisions are the ones we have already quoted, and they are relied on as sufficient to condemn and avoid the instrument.

It is quite true Courts of high authority have held that a mortgage conveying a stock in trade and containing an express covenant, or accompanied by an independent agreement, permitting the mortgagor to remain in possession for the purpose of selling the mortgaged articles for his own use and benefit, or for the purpose of replacing such of them as he might sell, is null and void as to creditors of the mortgagor because fraudulent in law, without reference to the *bona fides* of the mortgage debt or the honesty of the mortgagor's intention. *Robinson et al.vs. Elliott, assignee,*22 *Wal.*,510; *Davenport et al.vs. Toulke,*68 *Ind.*, 382; *Voorhis vs. Langsdorf,*31 *Mo.*,451; *Collins and McElroy vs.Myers,*16 *Ohio R.*, 547; *Freeman vs. Rawson,* 5 *Ohio St.*,1; *Southard vs. Benner et al.,*72 *N.Y.*,424; *Place vs. Langworthy,*13 *Wis.*,629; *Edgell vs.Hart,*5 *Seld.*,213. And it is also true other Courts entitled to equal respect have held that such a mortgage is not *per se* void; but that the reservation of a power thus to sell is only evidence of a fraudulent intent for the consideration of the tribunal which has to determine the question of fraud. *Oliver vs. Eaton,* 7 *Mich.*, 108 ; *Cheatham vs. Hawkins,* 76 *N.C.*, 335 ; *Fletcher vs. Powers,* 131 *Mass.*, 333 ; *Van Meter vs. Estill,* 78 *Ky.*, 456 ; *Fisher et al. vs. Syfers et al.,* 109 *Ind.*, 514.

But we are not now confronted with this precise question. The mortgage contains no clause giving the mortgagor power to sell the mortgaged property, either for his own use or for the purpose of replenishing the stock; and there is no evidence in the record tending to establish the existence of a collateral, independent agreement between the mortgagor and mortgagee conferring upon the former such authority. Mere possession by the mortgagor of the mortgaged property is not, under our registry laws, a badge or indication of fraud; and to hold that a merchant cannot mortgage his goods without closing his doors, would be to hold that a chattel mortgage upon such property is worthless. *Gay vs. Bidwell*, 7 *Mich.*, 520. The clause we have cited from the mortgage attempts to make provision for subjecting to the lien of the mortgage, after-acquired stock in trade, and whilst contemplating, as its language imports, the obvious contingency that some of the stock would or might be sold in the ordinary course of business unless the mortgagor should close his doors at once and discontinue his occupation altogether, it did not in terms reserve to him either the right or the power to sell the mortgaged property for his own use and benefit, or for any other purpose. On the contrary, the clause in question by declaring that all stock substituted for the stock sold should be subject to the lien of the mortgage, indicates that the parties intended that the mortgagor should not make such sales for his own interest and advantage, but that if he did make any sales of the mortgaged stock, they should enure to the benefit and security of the mortgagee. This clause, therefore, whilst conferring no authority upon the mortgagor to make sale of the mortgaged stock in trade, made or undertook to make provision for subjecting after-acquired stock in trade to the lien of the mortgage.

But such a provision, whilst not of itself rendering the mortgage void, as fraudulent, is at law simply a nullity. It is the settled doctrine of the Maryland Courts that a pro-

vision such as this in an ordinary mortgage creates no lien at law on after-acquired property. *Hamilton & Robinson vs. Rogers,* 8 *Md.,* 301; *Rose & Gauss vs. Bevan et al.,* 10 *Md.,*466; *Wilson vs. Wilson,*37 *Md.,*1; *Crocker vs. Hopps,* 78 *Md.,* 260. There are conditions under which a covenant like this would be held valid in equity, but they are not presented here. *Butler vs. Rohm,* 46 *Md.,* 541.

Inasmuch, then, as the mortgage was ineffectual to create at law a lien upon after-acquired property, it follows that as to all such property, the mortgage was no impediment to the enforcement of the execution issued on the bank's judgment. And if, with the knowledge of the mortgagee and for its benefit, this after-acquired property has been so intermingled with the property embraced in the mortgage as not to be distinguishable from the latter, as alleged in the amended bill of complaint, a judgment creditor of the mortgagor could lawfully levy upon and sell the whole or so much thereof as might be necessary to satisfy his debt. 8 *Md., supra*; *Chappell et al. vs. Cox,* 18 *Md.,* 543. It results, then, that as the clause which we have been considering was wholly ineffective at law to include after-acquired property, and as the mingling of such property with that covered by the mortgage destroyed the identity of the latter and rendered the whole of it liable to seizure and sale under the *fi. fa.* there was no necessity for resorting to a Court of equity to set aside the mortgage, and there was no power or jurisdiction in that Court to grant, under these circumstances, the relief sought under the bill of complaint. Necessarily, therefore, the decree dismissing the bill was right, and must be affirmed.

*Decree affirmed, with costs.*

(Decided 14th March, 1894.)