*THE BALTIMORE HUMANE IMPARTIAL SOCIETY AND AGED WOMEN'S AND AGED MEN'S HOMES vs. ELISHA PIERCE ET AL.

*Specific Performance—Contract to Transfer Future Acquired Property to a Home for Aged Men Lacking in Mutuality.*

At the time of his admission to a Home for Aged Men defendant agreed to sign a contract by which, in consideration of his admission, he covenanted to transfer to the Home all the property he then owned and any which he might thereafter in any manner acquire. Under the terms of admission the managers of the Home were entitled to cause the applicant to be removed in case he failed to yield due submission to the regulations of the establishment or if he became insane. The contract of admission was not signed by any officer of the Home. After living there for ten years defendant became entitled to a sum of money as the next of kin of a deceased son and the Home filed this bill asking that the defendant and the administrator of the decedent be required to pay said sum to the Home. *Held*, that since the contract imposes no obligation upon the Home, it is lacking in mutuality and consequently is not specifically enforceable against the defendant.

Appeal from Circuit Court No. 2, of Baltimore City (SHARP, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Leigh Bonsal* (with whom was *E. G. Miller, Jr.,* on the brief), for the appellant.

*George W. Cameron,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The appellant is a body corporate, duly incorporated for a charitable purpose, having for its object the care of aged women and men, who are without the means to provide for themselves a comfortable home.

*See *Balto. Humane, etc., Society* v. *Pierce,* 100 Md. —

It appears from the record that on the sixth day of April, 1893, the appellee, Elisha Pierce, a resident of Baltimore City and about seventy years of age, was admitted as an inmate of this institution, under the following admission contract, which according to the rules of the institution had to be signed by, and also in behalf of the applicant, by two responsible persons, as sureties.

### *Contract.*

"We, the undersigned, at the instance and request of Elisha Pierce, who is about to be admitted into the Aged Men's Home, of the above named corporation, hereby covenant that he shall at all times yield due submission to the discipline, rules, and regulations of the said corporation, of said home, or its superintendent and should said applicant, in the judgment of the board of managers thereof, fail to do so, they being the sole and exclusive judges thereof, or should he be afflicted with ungovernable insanity, we will at once remove said applicant from said institution and release the institution from his supports to which said applicant testifies his assent, by writing herein, and likewise so covenants.   Done in consideration of such admission this sixth day of April, 1893.

|                      | Elisha Pierce.      | Seal. |
| Party applying in    | George W. Pierce.   | Seal. |
| behalf of applicant. | H. M. Brewer.       | Seal. |

It also appears that another requisite for admission to the institution was, that the applicant and two responsible persons, as sureties, should sign a contract and covenant to the following effect:

"We, the undersigned, do hereby covenant and declare that Elisha Pierce about to be admitted into the Aged Men's Home of the above-named corporation hath not now any property and is not the recipient of any income from any source whatever, and do also covenant that should he by any devise, legacy or otherwise, become the owner of any property whatever, we will have the same, with any now owned, conveyed and transferred to the said corporation, in obedience to this covenant, and by this instrument he grants to the corporation, above named, all his right and title to any and all property of which he is now seized and possessed or to which he hath any right or title.   This done in consideration of such admission and the applicant hereby constitutes the Treasurer thereof,

for the time being, at his death, executor of this instrument, which is to operate as a last will and devises to said institution his entire estate real and personal, by these presents, of whatsoever kind and wheresoever situate, as witness our hands and seals this 6th day of April, 1893.

Party applying  hereby seals as
applicant, covenantor  and testator,
in behalf of applicant as sureties George W. Pierce.  Seal.
and witnesses to this instrument H. M. Brewer.    Seal.
by him declared to be his last will                         Seal.
and witnessed by us at his request
as such in his presence and in the
presence of each other.

The appellee was admitted into the institution, under the foregoing contract, notwithstanding it appears he failed to sign the last-named contract and remained there for ten years.

On the 4th of November, 1903, his son, George W. Pierce, one of the sureties on the contract died intestate and Elisha Pierce being entitled to his estate, amounting to about $4,000, the appellant filed the bill of complaint in this case.

The prayer of the bill is, that "a decree be passed, declaring that all property which under the laws of Maryland would be payable by the administrator of George W. Pierce to Elisha Pierce, is the property of the appellant, as assignee of Elisha Pierce, and as creditor of George W. Pierce, and that the administrator be restrained from handing over the estate or any part thereof to Elisha Pierce, and that Brewer, the surety be decreed to carry out the terms of his contract of suretyship." The bill also contains a prayer for general relief.

On the 24th of February, 1904, the case was heard on demurrer, upon the grounds that the plaintiff had not stated such a cause as entitles it to relief in equity and from a decree of Court sustaining the demurrer this appeal has been taken. The principal question in this case is this: Do the facts relied upon by the appellant, in this case, establish such a contract as a Court of Equity will enforce in its behalf. In the case of *Aged People's Home* v. *Hammerbacker*, 64 Md. 595, where a contract contained a provision for admission into that insti-

tution, that the applicant should transfer to the institution all the property that he had at the time, it was held that the contract containing this provision was not against public policy, but the power of the corporation to require the applicant to convey to it all his property must be confined to property owned and possessed by the applicant at the time. It was further said, as to its power, by bond or otherwise, to enforce the conveyance to it of any future acquisition of property, it is not necessary for us to express any opinion, as that question does not arise in this case. We may say that some different principles might govern the case of future acquisitions. In the case of *National Bank* v. *Lindenstruth*, 79 Md. 140, where it was sought to subject to the lien of a mortgage, after acquired property, it is said, that it is the settled doctrine of the Maryland Courts, that a provision such as this, in an ordinary mortgage creates no lien at law on after acquired property. And in *Butler* v. *Rahm*, 46 Md. 541, where a mortgage attempted to convey "future to be acquired property" it was held that while it is well settled that a party cannot convey subsequently to be acquired goods so as to give the mortgagee a legal title thereto or a legal right of action against a party seizing them, yet it has frequently been decided that such a conveyance creates in equity a valid lien upon property, subsequently acquired.

In the case now before us it will be seen that the contract which is sought to be enforced was never signed and executed by the appellee, Pierce, and although it is alleged by the bill and admitted by the demurrer that he agreed at the time to do so, we do not think that such a contract can be specifically enforced against him in a Court of equity. It is only an agreement to sign a contract, and this agreement is alleged to have been made more than eleven years ago. Moreover, there is such a lack of mutuality in the contract as precludes the appellant from obtaining the relief asked for. It is not only not signed by the appellant but does not profess to impose upon it any obligation for its execution. It is clear that the appellee could not ask specific execution against the appellant. In

*Fry on Specific Performance*, sec. 286, it is said: "A contract to be specifically enforced by the Court must be mutual—that is to say—such that it might at the time it was entered into, have been enforced by either of the parties against the other of them. Whenever, therefore, whether from personal incapacity, the nature of the contract or any other cause, the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other, though its execution in this latter way might in itself be free from the difficulty attending its execution in the former." *Duvall* v. *Myers*, 2 Md. Chy. 481; *Gelston* v. *Sigmund*, 27 Md. 335; *Geigor* v. *Green*, 4 Gill, 367; *Pomeroy on Specific Performance*, sec. 163; *Dixon* v. *Dixon*, 92 Md. 440.

In our opinion there was no error, in the ruling of the Court, upon the demurrer, and its order of the 26th of February, 1904, will be affirmed and the bill will be dismissed.

　　　　　　　　　　　*Order affirmed and bill dismissed with costs.*

(Decided June 9th, 1904.)