## MERCHANTS' NAT. BANK OF BALTIMORE v. CORR et al.

### (Circuit Court of Appeals, Fourth Circuit. February 2, 1915.)

### No. 1320.

BANKRUPTCY ⟨⚬⟩161—PREFERENCES—SUBSTITUTION OF LIENS.

Defendant bank, holding as collateral warehouse receipts for raw material for use in a bankrupt's factory, permitted the same to be withdrawn on trust receipts, to be held and sold for its benefit, but with knowledge from the past course of dealing that the bankrupt used it with other material in its factory and sold the finished product. Held, that the fact of such mixing of material did not give defendant a lien or claim on the proceeds of all of the sales of the factory, which would support an assignment of the accounts therefor within four months prior to the bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. ⟨⚬⟩161.]

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action at law by Peter H. Corr, William J. O'Brien, Jr., and R. Howard Bland, trustees in bankruptcy of the Baltimore Waste Company of Baltimore City, against the Merchants' National Bank of Baltimore. Judgment for plaintiffs, and defendant brings error. Affirmed.

R. E. Lee Marshall, of Baltimore, Md., for plaintiff in error.

William J. O'Brien, Jr., and R. Howard Bland, both of Baltimore, Md. (J. Kemp Bartlett, Edgar Allan Poe, and L. B. Keene Claggett, all of Baltimore, Md., on the brief), for defendants in error.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

WOODS, Circuit Judge. This cause, depending mainly on the decision of issues of fact, was submitted to the District Judge without a jury. The only inquiries this court can make are (1) whether the decision was made in consequence of an erroneous application of law in arriving at the verdict, and (2) whether the verdict has reasonable support in the evidence.

The Baltimore Waste Company was adjudicated a bankrupt on November 21, 1906. On November 17, 1906, the Waste Company was indebted to the Merchants' National Bank of Baltimore by balance on a note in the sum of $24,668.31. There was other indebted-

ness of the Waste Company to the bank by note for $2,500 August 20, 1906, and $1,500 October 18, 1906, secured by foreign bill of lading for bagging. To secure all this indebtedness the Waste Company on November 17, 1906, assigned to the bank accounts to the amount of $8,727.25 and warehouse receipts for bagging and other merchandise. On the accounts the bank afterwards collected $7,-667.50. This action was brought by the trustees to set aside the assignment as an illegal preference under the bankrupt law (Act July 1, 1898, c. 541, 30 Stat. 544), and recover from the bank the amount realized thereon. The District Court directed a verdict to be entered for the plaintiffs for $5,434.

The evidence is convincing that on November 17th, when the assignment was made, the bank had notice that the Waste Company was hopelessly insolvent. This appears, not only from the information imparted by the president of the Waste Company, but from the entries made by the bank on its books in the effort to make the transaction a novation. If the bank, therefore, could claim any of the property mentioned in the assignment, it could only do so under some right acquired before. Indeed, the claim of the bank is that the assignment of November 17th was only segregating and designating the property which the bank already had as security under this arrangement for financing the Waste Company: In lending money to the Waste Company from time to time, the bank took three kinds of security—drafts with bills of lading, representing the finished product sold to customers, warehouse receipts for raw material, and trust receipts covering raw material taken from the warehouse by the Waste Company with the bank's consent. These trust receipts stipulated that the material was to be held for the bank, with liberty to sell it and apply the proceeds to any indebtedness to the bank. The Waste Company mingled the raw material so taken from the warehouse under the trust receipts with other material in its factory, and sold the manufactured product. This commingling was so loosely done that it was impossible to tell with accuracy how much of the raw material held in trust for the bank had gone into the finished product covered by a particular sale.

The bank claims the accounts formally assigned and turned over to it on November 17th under the trust receipts, alleging that they represented the raw material covered by the receipts, which had been manufactured and sold to the persons against whom the accounts were held. In asserting this claim it took the position that if the Waste Company, the trustee, so mingled the bank's property with its own that it could not be distinguished, then the whole would fall under the trust. The court accepted this as the law, unless it should find:

"That the defendant was well aware, at and before the times at which said confusion was effected, that the bankrupt company was dealing with said trust property in such a way as to make such confusion inevitable, and did not object thereto."

The court accepted the following request as sound:

"If the court, as a jury, shall find that said merchandise transferred and delivered to the defendant by the bankrupt company consisted in part of mer-

chandise belonging to the defendant, and held by the bankrupt company in trust for the defendant under the terms and provisions of the said 'trust receipts,' and in part of merchandise belonging to the bankrupt, then the defendant is entitled, in any event, to so much and such part of said merchandise so belonging to it, and the burden is upon the trustees to prove what part of said merchandise belonged to the bankrupt and what part thereof belonged to the defendant."

This we think was a statement of all the law applicable to the case, and it was certainly as favorable to it as the defendant could ask. Kreuzer v. Cooney, 45 Md. 583; Bank v. Lindenstruth, 79 Md. 141, 28 Atl. 807, 47 Am. St. Rep. 366.

The position that the evidence admitted of no other reasonable inference than that all the accounts represented the trust property is entirely untenable. The evidence of Mr. Ingle, vice president of the bank, shows clearly that the bank was aware of the mingling of the material covered by the trust receipts and other material, and made their loans in view of this method of business. The identification of the accounts depended on the evidence of Mr. Egan, who could say little more than:

"That some of the material was stuff that we had gotten on trust receipts for the bank, but anyhow my object was to get rid of those trust receipts; that is why I assigned the accounts."

In view of the indefinite and uncertain character of the evidence, the issues of fact were peculiarly for the District Judge sitting as a jury, and there is no ground for interference by this court.

Affirmed.