## In re SACHS.

District Court, D. Maryland. October 12, 1927.

No. 5005.

1. **Bankruptcy ☞184(1)—Right of receiver in bankruptcy to return of automobiles, held under chattel mortgages, held determinable by state law.**

Right of receiver in bankruptcy to return of certain automobiles, held by virtue of chattel mortgages, on ground that mortgages were invalid as to creditors, *held* determinable by state law, where transactions were consummated.

2. **Bankruptcy ☞184(3)—Chattel mortgage on automobiles remaining in mortgagee's possession held valid as against receiver in bankruptcy for mortgagor.**

Where automobiles covered by chattel mortgages were retained at all times in possession of mortgagee, validity of mortgages cannot be questioned by receiver in bankruptcy for mortgagor, since under such circumstances there is no false appearance of credit given to mortgagor which would enable him to mislead creditors.

3. **Chattel mortgages ☞6—Bills of sale of automobiles held not void as to seller's creditors because of subsequent unrecorded consignment agreements not operating as defeasances (Code Pub. Gen. Laws Md. 1924, art. 66, § 1).**

Bills of sale of automobiles *held* not void as to seller's creditors under Code Pub. Gen. Laws Md. 1924, art. 66, § 1, because of subsequent consignment agreement authorizing seller to hold automobiles and sell them within 90 days, since such agreements, having on their face no reference to or connection with bills of sale, did not operate as defeasances required to be recorded within the above section.

**4. Chattel mortgages ⟐⟐6—"Defeasance" implies some right in one benefiting thereby to compel performance under conditions defeating original agreement.**

"Defeasance" implies some right in the one benefiting thereby to compel the opposite party to perform in accordance with certain conditions in defeat of the original agreement.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Defeasance.]

**5. Sales ⟐⟐457—"Conditional sale" requires absolute obligation of purchaser to pay for goods, while "consignment" is only bailment for sale.**

The vital, distinguishing feature of a "conditional sale" is that the purchaser undertakes an absolute obligation to pay for the goods, while a "consignment" is nothing more than a bailment for sale.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conditional Sale; Consignment.]

**6. Bankruptcy ⟐⟐140(4)—Receiver in bankruptcy held not entitled to recover automobiles from owner delivering them to bankrupt under bailment for sale.**

Where automobiles were delivered to bankrupt in accordance with plan of financing, whereby the automobiles were intended to be delivered to bankrupt under a bailment for sale, with right of owner to retake possession at any time, the receiver in bankruptcy is not entitled to possession of such automobiles as against owner, since, under Maryland law, title remains in consignor.

**7. Bankruptcy ⟐⟐140(4)—Consignor has superior right to bankrupt's general creditors or trustee (Bankruptcy Act [11 USCA § 75]).**

A consignor of goods has superior right to bankrupt's general creditors or trustee under Bankruptcy Act, § 47a (11 USCA § 75).

In Bankruptcy. In the matter of the bankruptcy of Louis Sachs, trading as the Sachs Auto Company. On petition by the receiver for the return of certain automobiles held by Eleazer Winakur. Petition dismissed.

Randolph Barton, Jr., of Baltimore, Md., for petitioner.

Daniel C. Joseph and Abram C. Joseph, both of Baltimore, Md., for receiver and trustee.

COLEMAN, District Judge. This is a petition filed by the receiver in bankruptcy proceedings for the return of certain automobiles. The defendant, Eleazer Winakur, in his individual capacity, had undertaken to finance the bankrupt, Louis Sachs, trading as Sachs Auto Company, in the business of buying and selling secondhand automobiles. The scheme pursued as to some of the cars was to take chattel mortgages, storing the cars in the defendant's garage until Sachs had paid the amount of the loan. As to others, the bankrupt gave a bill of sale covering each car, and simultaneously the defendant entered into a consignment agreement, which recited that Sachs was to have possession of the car or cars for a period of 90 days, in order to sell them and pay the bill of sale with interest, or return the cars. Defendant in all cases retained the title papers. Both the chattel mortgages and the bills of sale were seasonably recorded, but the consignment agreements were never recorded. Defendant replevied the consigned cars a few days before the involuntary proceedings in bankruptcy were begun, and now seeks to withhold them from the receiver along with the other cars always in his possession under the chattel mortgage scheme.

[1, 2] The receiver contests defendant's right to do this upon three grounds. The first is that the chattel mortgages, since, as is alleged, they contemplated possession in the mortgagor for purposes of resale, are fraudulent as to creditors, and therefore invalid. The merits of this contention are necessarily to be determined by Maryland law. See Edelhoff v. Horner-Miller Mfg. Co., 86 Md. 595, 612, 39 A. 314; First National Bank v. Lindenstruth, 79 Md. 139, 140, 28 A. 807, 47 Am. St. Rep. 366; In re Durham (D. C.) 114 F. 750, 754 (Fourth Circuit). It becomes unnecessary, however, to decide this precise question, because, as the evidence shows, all the cars under mortgage remained at all times in the possession of the mortgagee, and, this being the case, there can be no doubt of the validity of the mortgages. Under such circumstances, there is no false appearance of credit given to the mortgagor which enables him to mislead creditors; this being the basis of the rule contended for by the receiver. As is said in Re Hallbauer (D. C.) 275 F. 126, at page 127:

"In this class of cases it is not a question of actual fraud; the law strikes down such a mortgage, because in the contest between the lienor and a creditor, the lienor, who by his acts has placed it within the power of the debtor to secure credit on the strength of the possession of the property and apparent dominion over it, must suffer rather than the creditor. Actual notice of the lien would present a different question in the case of a purchaser."

On this ground, then, the receiver's claim is not tenable.

[3] The next ground taken by the receiver is that the bills of sale are essentially mort-

gages and void as to creditors, since the consignment agreements operate as defeasances, and are not recorded as required by the Code of Maryland, art. 66, § 1. This provision is as follows:

"Every deed conveying real estate or chattels, which by any other instrument or writing shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage, and the person for whose benefit such deed shall be made shall not have any benefit or advantage from the recording thereof, unless every instrument and writing operating as a defeasance of the same, or explanatory of its being designed to have the effect only of a mortgage or conditional deed, be also therewith recorded."

This ground also is not well taken. The consignment agreements do not conform to the definition of "defeasance" as that word has been construed. The body of each consignment agreement reads as follows:

"It is agreed that said Sachs shall be permitted to hold said chattels, and to sell them in the usual course of business, and within 90 days from the day of the date hereof either redeliver the same to the consignor or to pay to said Eleazer Winakur out of the proceeds of sale the cost value for the purposes of this memorandum as shown in this memorandum, and also to pay him monthly 3½ per cent. per month thereon from the date of this memorandum, and the balance of the proceeds of sale to be retained by said Sachs, the said Eleazer Winakur to receive said money payable to him absolutely net to him, and all costs and expenses in connection with said chattels in any manner whatsoever, to be borne by said Sachs, and nothing herein contained to in any manner infer any partnership between the parties hereto; the relation being distinctly that of consignor and consignee, settlement as above to be made immediately upon sale of said chattels.

"And said Eleazer Winakur reserves the right at any time without notice to take possession of said chattels and terminate said consignment.

"And the consignee to keep insured against loss by fire, at his own expense, all of said chattels and the said chattels to be generally at the risk of the consignee until and unless actually redelivered to the consignor.

"Said chattels shall not be removed from said premises without the consent in writing of the consignor."

In Hoffman v. Gosnell, 75 Md. 577, 589, 24 A. 28, 30, the court said:

"A defeasance is an instrument executed at the same time with some other deed, and intended to defeat the force of the latter upon the performance of certain conditions expressed therein."

[4] The consignment agreements have on their face no reference to, or connection with, the bills of sale. Indeed, the receiver seems to be blowing hot and cold with the same breath, because he also earnestly contends that they are conditional sales contracts, or contracts of sale or return—a contention which will be later considered. By the bills of sale, the defendant becomes absolute owner and does not have to return the cars for sale at all, but may sell them on his own account; and the bankrupt, by the terms of the consignment agreement, has no right to compel defendant to release the cars. A defeasance implies some right in the one benefiting thereby to compel the opposite party to perform in accordance with certain conditions in defeat of the original agreement.

It seems, therefore, that there is no ground upon which to urge that the consignment agreements must be recorded.

[5] The third, final argument made by the receiver, obviously in direct contradiction of his second contention, is that the consignment agreements are conditional sales contracts, under which reservation of title by the vendor is ineffectual against creditors unless there is recordation; or are contracts of sale or return. This raises first the question of the distinction between a conditional sale and a consignment contract, which is one of fact. See Williston on Sales, § 338. The vital, distinguishing feature of a conditional sale is that the purchaser undertakes an absolute obligation to pay for the goods; while a consignment is nothing more than a bailment for sale. As was said in Walter A. Wood Mowing & Reaping Mach. Co. v. Vanstory (C. C. A.) 171 F. 375, 381:

"Even if the bankrupt had an option to purchase the entire lot of machinery deposited with it, under the circumstances, with the conditions attached as in this instance, the granting of the option on the part of the petitioner could not have the effect of converting the bailment into a sale, nor could it vest the bankrupt with the title to the property."

[6] In the present case, it seems clear that, even though the parties were dealing with each other on a plan of financing, it was a bailment of the automobiles to the bankrupt for sale that was both intended and created.

The defendant was the real owner, and could retake the cars at any time. Maryland law recognizes that the title remains in the consignor. Sturtevant v. Cumberland, Dugan & Co., 106 Md. 587, 68 A. 351, 14 Ann. Cas. 675.

Second, the parties clearly were not dealing as buyer and seller. The language of the agreements negatives any such intent. This prevents them from being contracts of sale or return. For, even though the language gives the right to sell or return, that is obviously not used here in the same sense as the trade expression "sale or return" is commonly employed. The use of the latter expression indicates that the seller has sold to the buyer, subject to his right to return if he is not satisfied. Obviously there was no such intention here. The bankrupt was not himself the purchaser, and his right to return the property was to be governed, not by dissatisfaction with the property, but rather by his inability to sell it within the stated time. Note also that the goods are to be held and sold in the usual course of business; that interest is charged on their *cost* price; that defendant can at any time without notice retake the goods, and "terminate said consignment"; and that the relation is "distinctly that of consignor and consignee, settlement as above to be made immediately upon sale of said chattels." See Williston on Sales, § 270.

[7] The cases all recognize that a consignor of goods is superior to general creditors or the trustee, under section 47a of the Bankruptcy Act (11 USCA § 75). Healy v. Boston, etc., Rubber Co. (D. C.) 268 F. 75, 45 Am. Bankr. R. 727; Matter of Wood (D. C.) 283 F. 565, 49 Am. Bankr. R. 608; Ludvigh, Trustee, v. American Woolen Co., 231 U. S. 522, 34 S. Ct. 161, 58 L. Ed. 345; Rockmore v. American Hatters & Furriers (C. C. A.) 15 F.(2d) 272.

The entire claim of the receiver is based upon one or more of the above grounds. He made no claim of actual fraud, nor does the court find the transactions to have been fraudulent.

The petition is dismissed.