## CRESWELL *v.* LANAHAN.

The Freedman's Savings and Trust Company, chartered by an act of Congress approved March 3, 1865 (13 Stat. 510), being, during a financial crisis pressed for means, its agent, with the knowledge and consent of its trustees, borrowed of A. moneys which were applied to its use. A note therefor was signed by the actuary of the institution, who subsequently transferred to A., in satisfaction thereof, certain securities belonging to the company. That officer was held out to the public as competent to make such an exchange, and there was no departure in this instance from the established usage. No fraud was committed, and the transaction was advantageous to the institution. On the failure of the company, the commissioners appointed to wind up its affairs filed their bill, praying that A. be decreed to deliver to them said securities. *Held,* that the commissioners are not entitled to relief.

APPEALS from the Supreme Court of the District of Columbia.

The Freedman's Savings and Trust Company, and John A. J. Creswell and others, its commissioners, filed, June 26, 1875, two bills in equity in the court below against Thomas M. Lanahan and others. One bill charges that Juan Boyle, on or about July 31, 1871, being indebted to the company in the sum of $2,500, for which it held his note of that date, payable in one year, executed and delivered to Eaton and Stickney to secure its payment, a deed of trust of the same date (duly recorded), with the usual power of sale, conveying certain real estate in Washington.

It further charges that the note held by the company as part of its assets was, June, 1874, unlawfully, and to the prejudice of its depositors and creditors, taken from its assets, and delivered to Lanahan, who is now holding it in his possession and pretending to be the owner of it. The delivery and transfer of the note to him are then charged to have been unlawful and void, upon the ground that the act of Congress of March 3, 1865 (13 Stat. 510), organizing the company, requires the affirmative vote of at least seven members of the board of trustees to transfer any securities or assets belonging to the corporation, and the complainants charge that the note was transferred without any vote whatever, and without the knowledge and consent of any of the trustees.

The prayer of the bill is for general relief, and specially, that the pretended transfer of the note to Lanahan be declared null

and void; that he be directed to bring it into court to be disposed of according to law ; and that the trust property be sold and the proceeds applied to the payment of the note, for the benefit of the company and its creditors.

The other bill makes the same averments and claims the same relief as to a note for $8,000, executed to the company by Anna E. Boyle and others, secured in the same manner as the note of Juan Boyle, and transferred to Lanahan in the same way.

Lanahan answered, stating the circumstances under which he came into possession of the notes in question, and setting up a title thereto. They and so much of the charter of the company as relates to the case will be found in the opinion of the court.

The bill in each case was, on final hearing, dismissed, and the commissioners appealed.

*Mr. Enoch Totten* for the appellants.
*Mr. S. Teakle Wallis* for the appellees.

MR. JUSTICE SWAYNE delivered the opinion of the court.

Several of the documents referred to by the witnesses in one of the cases have been lost or destroyed, and there is some uncertainty and conflict in the testimony with respect to them and the transactions to which they relate. The discrepancies are not material, and the substantial facts appear with sufficient clearness to enable us satisfactorily to dispose of the controversy. A statement, somewhat condensed, will be sufficient for the purposes of this opinion.

In 1873, the Freedman's Savings and Trust Company, the corporation represented by the appellants, found itself seriously embarrassed for the want of means to meet its current daily liabilities. In November or December of that year, it borrowed from the appellee Lanahan the sum of $10,000, for which it gave its note, payable at sixty or ninety days, probably bearing a high rate of interest, and secured by $20,000 of the improvement bonds of the District of Columbia at their par value. The note was executed by the actuary of the company. The loan was negotiated by the appellee, Juan Boyle, who acted as the agent of the company, by virtue of a written document under the hand of its president and its corporate seal. The money was applied in payment of depositors. The institution was

suffering from the financial revulsion initiated and precipitated by the failure of Jay Cooke & Co., which swept over the entire country. It was deemed better to make loans at the interest paid, whatever it was, than to sell securities at the rates which then ruled in the markets.

About the 1st of May, 1874, it was agreed between Lanahan and Boyle that the former should lend the latter $21,000, including the note of the company for $10,000, and that Boyle should procure the company to transfer to Lanahan a note of Anna E. Boyle and others to the company for $8,000, secured by deed of trust to Eaton and Stickney, and the note of Juan Boyle to the company for $2,500, secured by another deed of trust to the same parties. Other collaterals, with which the company had nothing to do, were also to be delivered by Boyle to Lanahan. Boyle thereupon delivered the note for $10,000 to the company, and the company transferred and delivered to Lanahan the two notes of $8,000 and of $2,500. Both these notes were then overdue. This terminated Lanahan's dealings with the company, and these are the notes involved in this controversy. The bill, without imputing fraud, avers that Lanahan is not entitled to hold them, and prays that he may be decreed to deliver them to the complainants.

At the same time that Boyle delivered to the company its note for $10,000, he made a full and final settlement with it of all the liabilities of himself and of Juan Boyle & Co. He was found indebted to the company, after deducting the note of $10,000, in the sum of $28,522.38. Boyle thereupon gave the note of Juan Boyle & Co. for $28,000, secured it by certain collaterals, and paid the balance in cash. Subsequently the collaterals proved to be worthless, the firm became insolvent, and the debt is hopelessly lost to the company. It was considered safe by the actuary at the time of the transaction. Eaton, one of the trustees in the deeds of trust, died, and by proper proceedings the respondent Cull was substituted for him and Stickney. The third section of the act of Congress chartering the institution is as follows : —

"The business of the corporation shall be managed and directed by the board of trustees, who shall elect from their number a president and two vice-presidents, and may appoint such other officers

as they may see fit; nine of the trustees, of whom the president or one of the vice-presidents shall be one, shall form a quorum for the transaction of business at any regular or adjourned meeting of the board of trustees; and the affirmative vote of at least seven members of the board shall be requisite in making any order for, or authorizing the investment of any moneys, or the sale or transfer of any stock or securities belonging to the corporation, or the appointment of any officer receiving any salary therefrom."

On the 18th of September, 1873, the board of trustees authorized and empowered the officers of the company to assign and transfer any of the registered stock of the United States standing in its name.

On the 13th of December in that year, the same board directed the finance committee to authorize those officers to negotiate the securities of the company in such manner as to relieve the bank from its embarrassment.

There was no formal order touching either of the transactions of Lanahan with the company, but they were communicated, as were all others, daily to the individual members of the board. There is no proof that any objection was ever made. Several of the trustees expressed an earnest desire that the company should escape from the embarrassments by which it was surrounded, and be able to avoid bankruptcy. The threatened catastrophe proved inevitable. On the 29th of June, 1874, the company closed its doors, and a few days later went into liquidation. In the transactions with Lanahan in making the loan and giving the note in one case, and in transferring and handing over the two notes in the other, the actuary was governed by the settled usage of the bank in all such cases.

It is a striking fact that there is nothing in the record which casts the slightest shadow of bad faith upon either of the respondents, or upon the president or actuary of the company. It does not appear that a dollar of its means went fraudulently into the pockets of either of those parties.

The case naturally divides itself into two parts, each of which requires separate consideration : —

1. As to the loan of $10,000, and the note given to the lender.

2. The transfer of the two Boyle notes.

The question presented as to the first point is easy of solution. The money was fairly borrowed. The note was given for it, and the fund was honestly applied in payment of pressing liabilities of the company. The trustees individually were advised of the transaction and made no objection. It would be a perversion of the plainest principles of reason and justice to permit the validity of such a security to be effectually denied. It cannot be done. *De Groff* v. *American Linen Thread Co.*, 21 N. Y. 124; *Parish* v. *Wheeler*, 22 id. 494; *Bradley* v. *Ballard*, 55 Ill. 413; *Steamboat Company* v. *McCutchen & Collins*, 13 Pa. St. 13.

Courts do not look at such transactions with the microscopic eyes of a special demurrer.

The second point hardly admits of more doubt than the first one.

The company took up its note given to Lanahan, and gave him in place of it the two notes of the Boyles, amounting together to $10,500. When this was done, Juan Boyle paid the company $522.38. This was more than the difference in amount between the note first named and the other two. Certainly the company could sustain no possible injury from this exchange. It paid a debt overdue, and took up its note by parting with two of its securities. With the residue of the settlement between Boyle and the company Lanahan had nothing to do. He was neither a party nor privy. As to him it was *res inter alios acta*. It cannot in any wise affect his rights, and may properly be laid out of view.

If the two notes which he received can be wrested from him, the company will have had the full benefit of the loan, and have got back its note without paying any thing, while he will have lost the entire amount. This is a suit in equity. It would be a singular equity that could work out such a result.

But further: the actuary who made the exchange of securities was held out to the world as competent to do what he did. It was done in conformity to the established usage of the company in all such cases. Under such circumstances, the institution cannot be permitted to deny that he had all such powers as he habitually exercised, and thus assumed to have. *Merchants' Bank* v. *State Bank*, 10 Wall. 604.

The transaction, like all others, was made known to the trustees individually, and they never objected. This intelligent acquiescence was a binding ratification. *Kelsey* v. *National Bank of Crawford County*, 69 Pa. St. 426; *Hilliard* v. *Goold*, 34 N. H. 230; *Christian University* v. *Jordan*, 29 Mo. 68; *Sherman* v. *Fitch*, 98 Mass. 59.

The arrangement was first challenged after the company became bankrupt and went into the hands of the appellants.

The company was concluded, and the appellants can be in no better position. They, like assignees in bankruptcy, can have no rights, legal or equitable, but those of the insolvent party whom they represent. *Gibson* v. *Warden*, 14 Wall. 244.

The appellants are not entitled to any relief.

Other legal views which are applicable lead to the same conclusion, but it is unnecessary to pursue the subject further.

This opinion disposes also of the second case. The two cases are the same, *mutatis mutandis*.

*Decrees affirmed.*