(Decided January 4th, 1898).

---

## EDELHOFF & RINKE vs. THE HORNER—MILLER MFG. CO. ET AL.

*Time of Signing Bills of Exceptions—Chattel Mortgage of Corporate Property not Expressly Authorized by Directors—Sale of Mortgaged Goods by Mortgagor for the Mortgagee—Keeping Chattel Mortgage from Record—Confusion of Mortgaged Goods—Purchase by Insolvent—Fraud—Reasonable Expectation of Ability to Pay.*

Under Local Code, Art. 4, sec. 270, bills of exceptions on appeals from certain Courts must be signed within 30 days after verdict rendered unless the time be extended before the expiration of that period by consent of the parties or by order of Court. After the time for signing the bills of exception in this case was extended by order of Court passed upon consent, it was afterwards, within the time limited by the consent order, again extended by an order not passed by consent. *Held*, that the bills were validly signed within the time fixed by the last order.

A chattel mortgage of corporate property not shown to have been executed by the officers upon the express authority of the directors, will be presumed to have been either authorized or ratified when the money thereby obtained was used, without objection, in paying the debts and conducting the business of the corporation.

Where a chattel mortgage of merchandise does not empower the mortgagor to sell the goods for his own benefit, but there was an agreement between the parties that the mortgagor should sell the goods for the benefit, and in the name of the mortgagee, the proceeds being paid to the latter, such agreement does not render the mortgage invalid in law, but the same may be avoided upon proof that it was in fact designed to defraud the creditors of the mortgagor.

If after the execution of a chattel mortgage, a valid agreement is made between mortgagor and mortgagee that the same shall not be placed

upon record, for the purpose of deceiving the creditors of the mortgagor, the mortgage is fraudulent and void as to such creditors.

The lien of a chattel mortgage is not affected by the fact that the mortgagor, without the knowledge or consent of the mortgagee, mingles the goods covered by the mortgage with other property belonging to him.

When the question is whether goods were purchased by a corporation when insolvent, without reasonable expectation of paying for the same, so as to authorize the seller to rescind the sale for fraud, it is error to instruct the jury that although the corporation was insolvent, yet if the officers had a reasonable expectation of paying its accounts at maturity, based on all its resources, including assets on hand and credits, then the sale is not fraudulent, because, when it is proposed to instruct the jury as to the basis of the buyer's reasonable expectation of ability to pay, they should be directed to consider also the general indebtedness of the buyer and not be confined to a consideration of his assets and credits alone.

Appeal from a judgment of the Court of Common Pleas (HARLAN, C. J.) At the trial the following prayers, among others, were offered:

*Plaintiff's 1st Prayer.*—If the jury find from the evidence that the Horner-Miller Straw Goods Manufacturing Company of Baltimore City, a body corporate, purchased from the plaintiffs the goods described in the declaration; and that at the time of said purchase said body corporate knew itself to be insolvent and had no reasonable expectation of paying for the same, and did not pay for the same; that said body corporate, on the 17th day of September, 1895, made a deed of trust for the benefit of its creditors to W. Burns Trundle and John M. Littig, the defendants; that said defendants took possession of said merchandise under and by virtue of said deed of trust; that said goods and merchandise were taken under the writ of replevin in this case from said defendants, then their verdict must be for the plaintiffs, although the jury may also find that said goods and merchandise were covered by a chattel mortgage, executed on the 31st day of August, 1895, by the Horner-Miller Straw Goods Manufacturing Company to Shethar and Sanford, provided they also find that it was agreed and

understood at the time of the making of said chattel mort-
gage between said body corporate and Shethar and Sanford,
that the same was not to be recorded but was to be renewed
from time to time.    (Refused).

*Plaintiffs' 2nd Prayer.*—If the jury find that the Horner-
Miller Straw Goods Manufacturing Company of Baltimore
City, a body corporate, purchased from the plaintiffs the
goods and merchandise described in the declaration ; and
that at the time of said purchase the said body corporate
was insolvent and knew itself to be insolvent, and had no
reasonable expectation of paying for said merchandise, and
that the defendants obtained possession of said goods under
a deed of trust for the benefit of creditors executed by said
body corporate on the 17th day of September, 1895 ; and
that said goods were taken from the possession of the de-
fendants under the suit of replevin in this case, then their
verdict must be for the plaintiffs, although the jury may also
find that said goods and merchandise were included in a
chattel mortgage given by the said Horner-Miller Straw
Goods Manufacturing Company of Baltimore City to Shethar
and Sanford, provided the jury also find that it was agreed
by and between the said mortgagors and mortgagees that
the chattel mortgage was not to be put on record, and they
also find that said agreement was made to deceive and de-
fraud the creditors of said body corporate (with the knowl-
edge of both the parties thereto).    This prayer the Court
amended by inserting the words enclosed within the above
brackets.    (Granted).

*Plaintiffs' 3rd Prayer.*—If the plaintiffs sold the goods
and merchandise replevied in this case to the Horner-Miller
Straw Goods Manufacturing Company of Baltimore City, a
body corporate, and that said body corporate, at the time
said goods were purchased, was insolvent, knew itself to be
insolvent, and had no reasonable expectation of paying for
said goods and merchandise ; and that the defendants
obtained possession of said goods and merchandise under
and by virtue of a deed of trust for the benefit of creditors

from said body corporate, then their verdict must be for the plaintiffs, although the jury may also find that the said goods and merchandise were included in the property conveyed under a chattel mortgage from said body corporate to Shethar and Sanford; provided the jury also find that at the time of the execution of the said chattel mortgage, it was agreed and understood by and between the parties thereto, that the mortgagors should have the right and power to sell the goods and property described or referred to in said chattel mortgage. (Refused).

*Plaintiffs' 4th Prayer.*—If the plaintiffs sold to the Horner-Miller Straw Goods Manufacturing Company of Baltimore City, a body corporate, the goods and merchandise replevied in this case, and that at the time of said purchase the said body corporate was insolvent, knew itself to be insolvent, and had no reasonable expectation of paying for said goods and merchandise ; that the defendants came into the possession of said goods and merchandise under and by virtue of a deed of trust, for the benefit of creditors, executed by said body corporate, then their verdict must be for the plaintiffs, although the jury may also find that said goods and merchandise were included in the property conveyed under a chattel mortgage from said body corporate to Shethar and Sanford ; provided they also find that at the time of the execution of said chattel mortgage it was agreed and understood by and between the parties thereto, that the mortgagors were to remain in possession of the goods and property in said chattel mortgage mentioned or referred to, with power to sell and convey the same, and they also find that said agreement was made for the purpose of hindering, delaying or defrauding the creditors of said body corporate. (Refused).

*Plaintiffs' 5th Prayer.*—If the plaintiffs sold the goods and merchandise replevied in this case to the Horner-Miller Straw Goods Manufacturing Company of Baltimore City, a body corporate, and that said body corporate, at the time said goods and merchandise were purchased, was insolvent,

knew itself to be insolvent, and had no reasonable expectation of paying for the same, and that the defendants came into the possession of the said goods and merchandise, under and by virtue of a deed of trust for the benefit of creditors, executed by said body corporate, then their verdict must be for the plaintiffs, although the jury may also find that said goods and merchandise were included in the property conveyed by said body corporate to Shethar and Sanford by and under a chattel mortgage ; provided they also find that said chattel mortgage was given for money to be advanced after the execution of said chattel mortgage. (Refused).

*Plaintiffs' 6th Prayer.*—If the plaintiffs sold the goods and merchandise replevied in this case to the Horner-Miller Straw Goods Manufacturing Company of Baltimore City, a body corporate ; and that said body corporate at the time of said purchase was insolvent, knew itself to be insolvent and had no reasonable expectation of paying for the same ; and that the defendants obtained possession of said goods and merchandise under and by virtue of a deed of trust for the benefit of creditors, executed by said body corporate ; then their verdict must be for the plaintiffs, although the jury may also find that said goods and merchandise were included in the property conveyed by said body corporate to Shethar and Sanford by and under a chattel mortgage, provided they also find that the chattel mortgage was given in consideration of the payment of the sum of $25,000.00 by Shethar and Sanford to said body corporate, and they further find that only $10,000.00 of said consideration money was paid.   (Refused).

*Plaintiffs' 7th Prayer.*—If the plaintiffs sold the goods and merchandise replevied in this case to the Horner-Miller Straw Goods Manufacturing Company of Baltimore City, a body corporate ; and that said body corporate at the time said goods and merchandise were purchased was insolvent and knew itself to be insolvent, and had no reasonable expectation of paying for the same ; and that the

defendants came into the possession of said goods and merchandise under and by virtue of a deed of trust for the benefit of creditors executed by said body corporate, then their verdict must be for the plaintiffs, although the jury may also find that said goods and merchandise were included in the property mentioned or described in the chattel mortgage from said body corporate to Shethar and Sanford, provided they also find that said chattel mortgage was given for money to be advanced from time to time after the execution of said chattel mortgage and not for money (to be) advanced at the time of execution.    (Granted).

This prayer the Court amended by inserting the words enclosed within the above brackets.

*Plaintiffs' 8th Prayer.*—If the jury find from the evidence that the plaintiffs sold the goods and merchandise replevied in this case to the Horner-Miller Straw Goods Manufacturing Company of Baltimore City, a body corporate, in the month of May, 1895 ; and that the plaintiffs, before the delivery of said goods and merchandise to said body corporate, doubted the solvency thereof and refused to ship and deliver said goods and merchandise ; and that the plaintiffs informed said body corporate that they would not ship and deliver said goods and merchandise unless and until they were assured of its solvency ; and that said body corporate knew itself at that time to be hopelessly insolvent and had no reasonable expectation of paying for said goods and merchandise ; and that said body corporate, with their knowledge, made false and fraudulent statements of its solvency and financial condition, in order to induce the plaintiffs to part with said goods and merchandise ; and that the plaintiffs delivered said goods and merchandise because of, and in reliance upon, said false and fraudulent statements, then their verdict must be for the plaintiffs, although the jury may also find that said goods and merchandise were included in the property mentioned in the chattel mortgage from said body corporate, to Shethar and Sanford, provided they also find that it was agreed and

understood at the time of the execution of said chattel mortgage that the same was not to be recorded, but was to be renewed from time to time.   (Refused).

*Plaintiffs' 13th Prayer.*—If the plaintiffs sold the goods and merchandise replevied in this case to the Horner-Miller Straw Goods Manufacturing Company of Baltimore City, a body corporate, in the month of May, 1895, and that said goods and merchandise were not delivered until the month of August, 1895, and that the plaintiffs, before the delivery of said goods and merchandise, doubted the solvency of said body corporate and refused to ship and deliver said goods and merchandise; and that the plaintiffs informed said body corporate that they would not deliver said goods and merchandise unless and until they were assured of the solvency of said body corporate and its ability to pay for the same; and that said body corporate knew itself at the time to be insolvent and without reasonable expectation of paying for said goods and merchandise; and that said body corporate made false and fraudulent statements to the plaintiffs of its solvency and financial condition in order to induce the plaintiffs to part with their goods; and that the plaintiffs delivered said goods and merchandise because of and in reliance upon said false and fraudulent statements, if they find that such false and fraudulent statements were made, then their verdict must be for the plaintiffs, although the jury may also find that said goods and merchandise were included in the property mentioned in a chattel mortgage from said body corporate to Shethar and Sanford, provided the jury also find that it was agreed by and between the said mortgagors and mortgagees that the chattel mortgage was not to be put on record; and they further find that said agreement was made to hinder, delay or defraud the creditors of said body corporate (with the knowledge of both the parties thereto).   (Granted).

This prayer the Court amended by inserting the words enclosed within the above brackets.

*Plaintiffs' 14th Prayer.*—If the plaintiffs sold the goods

and merchandise replevied in this case to the Horner-Miller Straw Goods Manufacturing Company of Baltimore City, a body corporate, and that the said body corporate, at the time of said purchase, knew itself to be insolvent and had no reasonable expectation of paying for the same, then their verdict must be for the plaintiffs, although the jury may also find that the said goods and merchandise were included in the property mentioned in a chattel mortgage from said body corporate to Shethar and Sanford; provided they also find that said chattel mortgage was given in consideration of a loan of $25,000.00 to be made by said Shethar and Sanford to said body corporate, and that after $10,000.00 of said money was advanced, the said Shethar and Sanford repudiated and broke said contract and refused to pay the balance of said consideration of $25,000.00.   (Refused).

*Plaintiffs' 16th Prayer.*—If the plaintiffs sold the goods replevied in this case to the Horner-Miller Straw Goods Manufacturing Company of Baltimore City, a body corporate, and that at the time of said purchase the said body corporate knew itself to be insolvent and had no reasonable expectation of paying for the same, their verdict must be for the plaintiffs, although they may also find that said goods were covered by a chattel mortgage given by said body corporate to Shethar and Sanford, provided they also find that the execution of said chattel mortgage was not authorized by the stockholders or directors of said body corporate.   (Refused).

*Plaintiffs' 18th Prayer.*—If the plaintiffs sold the goods described in the declaration to the Horner-Miller Straw Goods Manufacturing Company of Baltimore City, a body corporate, and that the said body corporate at the time of said purchase knew itself to be insolvent, and had no reasonable expectation of paying for the same, then their verdict must be for the plaintiffs, although the jury may also find that said goods and merchandise were covered by a chattel mortgage executed by said body corporate to Shethar and Sanford, provided they also find that at the

time of the suing out of the replevin in this case and the retaking of the property the said body corporate was not in default under said chattel mortgage and was entitled under said chattel mortgage to the possession of said goods. (Refused).

*Defendants' 1st Prayer.*—That if the jury find from the evidence that the goods in question were purchased by the Horner-Miller Straw Goods Manufacturing Company of Baltimore City, under the contract in evidence, dated 25th of May, 1895, and that at the time of said purchase the said company was in fact insolvent and unable to pay all its debts as they matured, yet if they further find that the officers of said company had a reasonable expectation to pay the plaintiffs' account at maturity, based on all its resources, including assets in hand and available, its lines of credits and money to be realized in the future from the sale of manufactured products, and Mess. Horner and Miller of said company did not, nor did either of them, before the delivery of said goods, fraudulently represent to the plaintiffs that they were not giving larger discounts than all their competitors in said business, and did not fraudulently represent to said plaintiffs that they had made clean and clear and over and above everything, $30,000.00 profit for the season, which closed about June 1st, 1895 ; and did not fraudulently represent that said company was solvent, and that said goods were delivered to said company as shown in evidence, then the title to said goods passed by such delivery to said company, and the plaintiffs cannot rescind said contract of sale ; and the verdict of the jury must be for the defendants. (Granted).

*Defendants' 5th Prayer.*—That the burden of the proof is upon the plaintiffs under the pleadings in this case to show title in them to the goods replevied at the time of bringing this suit, superior to that of the trustees under the deed offered in evidence and superior to that of Shethar and Sanford under their chattel mortgage offered in evidence. (Granted).

*Defendants' 7th Prayer.*—That unless the jury believe from the evidence that the Horner-Miller Straw Goods Manufacturing Company, at the time of ordering the goods replevied in this case, was insolvent, that its president or vice-president knew that it was insolvent, and had no reasonable expectation of paying for said goods, their verdict must be for the defendants on the third issue, provided the jury further believe that neither Horner nor Miller, prior to the delivery of said goods by the plaintiffs, made to the plaintiffs fraudulent representations, either as to the solvency of said company, or as to the business it had done the previous year, or as to its not slaughtering its goods, or not selling them below cost.   (Granted).

The jury returned a verdict for the defendants.

The cause was argued before McSHERRY, C. J., FOWLER, BOYD and PAGE, JJ.

*Hugo Steiner* and *Lewis Putzel,* for the appellants.

*Thomas G. Hayes* and *James P. Gorter* (with whom was *W. Burns Trundle* on the brief), for the appellees.

PAGE, J., delivered the opinion of the Court.

The appellees have moved to dismiss this appeal, upon the ground that the bill of exception was not signed by the Judge, within the time allowed by the statute, and this motion will be first considered.

The verdict was rendered on the 20th of April, 1897. On the 7th of May the parties agreed that the time for signing and sealing the exception should be extended for the period of thirty days from that date, and on the 17th of May the Court so ordered.   On the 28th of May the parties again agreed there should be a further extension until the 15th of June, and on the 29th May the Court passed an order in conformity with the agreement.   On the 10th of June the Court ordered another extension until the 28th of June.   On the 23rd June the appellees filed a protest against the sign-

ing and sealing of any bill of exception, for the reasons
therein stated.   The Court, however, *sua sponte*, on the 20th
June further extended the time until the twentieth of August.
Both parties agreed at the argument that the bill of excep-
tions was signed and sealed, and filed on the 18th of August.
The question presented, depends upon the proper construc-
tion of Art. 4, sec. 170, Code P. L. L.   That section pro-
vides that bills of exceptions " may be signed " at any time
within thirty days after the rendition of the verdict, &c.,
" but not thereafter," unless the time for signing the same
" shall have been previously extended by order of Court or
by consent of parties," &c.   The power of the Court is
here defined with respect to the time at which bills of ex-
ceptions may be signed.   The Court is given power to sign
within thirty days after verdict, or thereafter, when the time
therefor has been previously extended by its own order, or
by the consent of parties.   The effect of the consent of par-
ties in cases where the thirty days have expired and there
has been no previous order of extension, is to confer upon
the Court the same authority to sign, as if there had pre-
viously been an order of extension.   Aside from the statute,
the Judge who tried the case had power to sign and seal
bills of exceptions at any time during the term at which the
trial occurred, but by express permission of the Court given
during the term, he could sign after the term.   If presented
after the term, and the parties consent that he shall sign,
both parties are afterwards estopped from raising an objection
as to his right and power.   *Thomas* v. *Ford*, 63 Md. 348.
The statute embodies this principle of estoppel against the
consenting parties, and converts what had theretofore been
a matter of practice, into a statutory requirement.   We can-
not, therefore, agree with the contention that the orders of
the 17th May and of the 29th May were inoperative, be-
cause of the consent of parties previously given that the
extension contained in them should be allowed.   Consent
alone cannot be the same as a judicial order.   The former
is quite sufficient to raise an estoppel ; but the latter is an

act demanding the exercise of discretion and judgment. Even though the parties consent, it is within the authority of the Judge to refuse to sign, in cases where in the exercise of a judicial discretion he deems it consistent with justice so to do.   It is as dangerous now as it ever was, " to allow a bill of exceptions of matters dependent upon memory at a distant period, when he may not accurately recollect them," as was said many years ago by CHIEF JUSTICE MARSHALL in *ex parte Bradstreet,* 4 Peters, 102.   See *Wheeler* v. *Briscoe,* 44 Md. 311; *Balt. Build. Asso., &c.,* v. *Grant,* 41 Md. 564; *Marseller* v. *Howland,* 34 Ill. Ap. 350.   In this case the first order of extension was passed within the thirty days, and the second within the period of extension, both of these upon the consent of parties.   The subsequent extensions were made by the Court within the life of the preceding orders.   It is therefore within the rulings of this Court in *Gottlieb* v. *The Fred-Wolf Co.,* 75 Md. 126.   For these reasons, the motion to dismiss the appeal must be overruled.

This is an action of replevin, in which the appellant is seeking to recover the possession of certain goods and chattels from the appellees, who are trustees under a deed of trust for the benefit of creditors from the Horner-Miller Straw Goods Manufacturing Company of Baltimore City, which will be hereinafter referred to as the corporation.   The articles replevied are ribbon bands, suitable to be used in the manufacture of hats.   They were ordered by the corporation from the appellants in the month of May, 1895, and were delivered from time to time from the second day of August up to the sixth of September following.

The pleas of the appellees are, *non cepit,* property in Sheathar and Sanford, and property in the trustees.

The appellant offered evidence tending to prove, first, that the corporation was insolvent at the time of the purchase, and that its officers knew or had good reason to know of its insolvency, and had no reasonable expectation of paying the bill at maturity ; and secondly, that before the goods were delivered the president and secretary induced the appellant

to deliver the goods by means of certain fraudulent repre-
sentation as to the corporation's business, and its ability to
pay its debts.   It also appeared in proof, that on the 31st
of August, 1895, the corporation executed and delivered a
chattel-mortgage to Shethar and Sanford, which was not
recorded until the 16th of September ; and it is claimed by
the appellants that this mortgage is fraudulent and void as
against them for reasons that will be more fully referred to
hereafter.

There were many prayers asked for on the trial—the ap-
pellant having presented twenty-eight and the appellee ten—
and it is to the action of the Court in disposing of them,
that this appeal is taken.

The appellee interposed special exceptions to many of
the prayers of the appellant, and these will now be con-
sidered.

In the 1st and 8th instructions asked by the appellant,
one of the facts upon which the plaintiff's right of recovery
depended, was that it was agreed between the parties, " *at
the time* " of the making of the chattel mortgage, that the
same was not to be recorded ; and the special exception is
there was no legally sufficient evidence of such agreement.
It must be noted that the prayer requires the jury to find
there was such agreement, and that it was entered into *at
the time* the mortgage was made.   Now there was evidence
tending to prove there was an agreement of such a char-
acter made at a time which does not appear, and the Court
in the appellants' second and thirteenth prayers instructed
the jury upon that condition of the proof.   If there was
such agreement made after the execution and delivery of
the mortgage for a valid consideration, and for the purpose
of deceiving the creditors of the corporation, it was a fraud
and the mortgage in that event would offer no obstruc-
tion to the plaintiffs' right of recovery.   This the Court rightly
ruled in granting these last mentioned prayers.   But the
first and eighth prayers of the appellant go much farther—
they are based upon the theory that evidence had gone to

the jury from which they could find that such agreement was made at or before the making of the mortgage. We do not think this theory can be maintained. The testimony of Mr. Putzel substantially is that at a meeting of the creditors of the corporation, at which either Shethar or Sanford was present, he heard that there was an agreement not to record the mortgage. Conceding, however, that Shethar or Sanford was present, and having heard the statement, was bound *in foro conscientiae* to reply, there is nothing in the statement that could warrant the jury in finding that the agreement was made at the time of the making of the mortgage. The same criticism may be made with respect to the evidence of Mr. Horner. He states, " the chattel mortgage was not to be recorded, that was understood   *   * it was to be renewed every two weeks." He does not give the agreement, nor by whom it was so understood. If he intended that the agreement not to record was made prior to or contemporaneously with the mortgage ; or that the agreement was a condition precedent to the completion of the transaction, it should have been stated in such terms as would enable the jury reasonably to draw such inferences. As the evidence stands, the understanding may have been on the part of Mr. Horner only, or it may have arisen after the transaction had been completed ; or grown up out of an intention on the part of Shethar and Sanford (known to Mr. Horner), which they were at liberty to carry out or not at their own pleasure. Such testimony we do not think was sufficient to support the theory of these prayers.

The appellees also excepted specially, on the ground of want of evidence ; 1st to the 3rd, 4th, 10th, 12th, and 15th prayers of the appellant, that at the time of the execution of the chattel mortgage it was agreed that the mortgagors were to remain in possession of the chattels conveyed, with the power to sell and dispose of them ; 2nd to the 5th, that the mortgage was given for money to be advanced from time to time after its execution and delivery ; 3rd to the 6th, that the mortgage was given in consideration of the payment

of $25,000 and only $10,000 were in fact paid ; and 4th to the 17th, that after the execution of the mortgage, the property transferred, with the knowledge of Shethar and Sanford, was so intermingled with the after-acquired property of the corporation as not to be distinguishable therefrom.

The chattel mortgage to Shethar and Sanford was executed by the corporation and delivered on the 31st of August. On its face, *it* purports to have been given in consideration of the sum of $25,000 due to them from the corporation. It conveys all the "braids, bands and sundries," machinery and all other goods and chattels then in the factory. It provides that until default the corporation shall possess the mortgaged property ; and after default that the mortgagees may take possession, &c. ; and on payment of the said sum on or before the first day of May next, it is to become null and void. It assuredly cannot be contended successfully that by any of these provisions or all of them taken collectively authority is conferred upon the mortgagors to sell the goods and chattels, or intermingle them with such chattels as it might thereafter acquire. It was executed by the president, vice president and treasurer of the corporation, and it is contended that in the absence of express authority, these officers had no power to pledge its assets. The evidence shows that under and by virtue of the contract Shethar and Sanford, on the day of the execution of the mortgage, paid five thousand dollars ; and a like sum on the fourth of September. These sums were received by the president, and were duly deposited in the National Marine Bank to the credit of the corporation, and were checked upon and used for the benefit of the latter in the ordinary course of business. Now while it may be true, as a general rule, that ministerial officers of a corporation without authority expressly conferred or to be implied from previous conduct, cannot pledge the property of the corporation, yet when a mortgage of its chattels has been made by such officers for the purpose of securing funds to pay its debts and continue its business, and it receives the full benefit of the trans-

action, without objection being made, it will be presumed to have authorized or ratified the acts of its officers. *Pittsburgh C. & S. R. R. Co.* v. *The K. & H. Bridge Co.*, 131 U. S. 371; 5 *Thompson on Corporations*, sec. 6175. This principle is founded on considerations of common honesty. One who neglects to disavow promptly the act of his agent, but on the contrary receives and appropriates to his own use the benefit thereof, ought not to be permitted afterwards to relieve himself of the burdens of the transaction by denying the authority of the agent. In such a case he makes the act his own. *Stokes* v. *Detrick*, 75 Md. 263 ; *Cresswell* v. *Lanahan*, 101 U. S. 347.

We are of opinion, therefore, that the corporation having received the money of Shethar and Sanford, and applied it to its own use, cannot now repudiate the act of its officers. The plaintiffs' sixteenth prayer was properly refused. The consideration set forth in the mortgage is the sum of $25,000, due from the mortgagor to the mortgagees. After the execution of the instrument that sum was in the hands of Shethar and Sanford, and the corporation could draw on it at its own pleasure. There is no evidence that the mortgage was executed for the purpose of securing other sums to be thereafter advanced. The sum to be secured having been particularly mentioned, the mortgage cannot be within the inhibitions of sec. 2 of Art. 66 of the Code. Nor is there any evidence of any commingling of goods with the knowledge or consent of either Shethar and Sanford, and without such knowledge or consent, the lien of the mortgage could not be impaired. *Krenzer* v. *Cooney*, 45 Md. 591.

The mortgage also provides that the corporation shall remain in possession of the goods ; but there is no right or power of sale reserved by any of its provisions to the grantor. Aside from that instrument, was there any contract or understanding between the parties permitting the corporation to sell for its own use or otherwise ? Mr. Horner testifies that " Shethar and Sanford were to sell the product of the company ;" that " these were to be billed from Shethar and

Sanford, and to have on the bills 'Manufactured by the Horner-Miller Straw Goods Mfg. Co. of Baltimore;' " and that " all orders taken by the company were to be turned over to them." Sanford states that " all the merchandise included in the mortgage had to pass through his hands in this way, viz., the merchandise was delivered to purchasers, a memorandum thereof was sent to his firm, who sent the bills to the purchasers and collected the money due thereon." Thus it seems the corporation was authorized to find purchasers and deliver the goods ; but the bills were to be made out in the name of Shethar and Sanford, and were to be sent to and collected by them. An arrangement like this obviously was not intended to subserve the interests of the corporation, but it was entered into for the benefit of Shethar and Sanford, to enable them more certainly to secure the prompt payment of the corporation's notes as they became due. These notes given for the money advanced by the firm, were ten in number, each for $2,500, and were payable the first one on the 15th of December, 1895, and the others respectively on the first and fifteenth of each successive month. Both parties relied on the sale of goods to enable the corporation to meet these obligations. It was therefore for that reason that it was understood that the corporation should deliver the goods to purchasers in the name of Shethar and Sanford and remit the bills to them, to be collected by them. It was in fact but little more than authorizing the corporation to act as the agent of Shethar and Sanford to dispose of the goods for their benefit, without power to collect the purchase money. There is no evidence in the case of authority to the corporation to make sales for its own use and benefit.

It has been held by some Courts that a mortgage conveying a stock in trade and containing an express covenant, or accompanied by an independent agreement, permitting the mortgagor to remain in possession with power to sell for his own use and benefit is fraudulent in law. *First Natl. Bank* v. *Lindenstruth*, 79 Md. 139. But that is not the

question now before us.   In this case the mortgage contains no covenant permitting the mortgagor to sell, and the verbal agreement which accompanied it contemplates only sales for the use and benefit of the mortgagees.   The cases cited by the appellants belong to the class in which the mortgagor is authorized to sell or dispose of the mortgaged property for his own use.   *Freeman* v. *Rawson*, 5 Ohio, 1 ; *Russell* v. *Winne*, 37 N. Y. 591.   See *Pierce on Mortgages of Merchandise*, secs. 114 *et seq.*

The principle laid down in these cases is a highly salutary one ; it is founded upon the reason that a power to the mortgagor to sell the goods and chattels conveyed for his own use has the effect of hindering and delaying creditors. A chattel mortgage containing a covenant permitting this to be done leaves the mortgagor in full control of his property and business, and at the same time operates as a " shield against the attack of creditors."   But no such reasons can be assigned in a case where the agreement accompanying the mortgage only authorizes the mortgagor in possession to find purchasers and to deliver the chattels on behalf of the mortgagee and for his benefit.   Such an agreement, if made and carried out in good faith, is not open to the objections we have just stated ; it cannot operate to hinder, delay or defraud creditors ; and in the absence of proof of actual fraud, ought to be respected.   This subject was ably discussed by MR. JUSTICE BREWER in the case of *Etheridge* v. *Sperry*, 139 U. S. 266.   There the decision turned on the question as to the ruling in the State of Iowa.   After a review of the cases from that State, and after determining that the settled construction of the doctrine by those Courts was that a power of sale to the mortgagor for the benefit of the mortgagee does not, as matter of law, invalidiate a chattel mortgage, the learned Judge concludes his opinion by saying : " So, if the question were open or a new one unaffected by any settled law of the State, we incline to the opinion that the question is not one of law, so much as it is one of fact and good faith, and that the decision of the

Supreme Court of Iowa rests on sound principles." *Manhattan Brass Co.* v. *Webster Glass, &c.,* 37 Mo. App. 145; *Sims* v. *Hodge,* 50 Hun, 410; *Largent* v. *Brown,* 3 Wash. Ter. 102; *Howard* v. *Rohlfing,* 36 Kan. 357; *Murray* v. *McNeally,* 86 Ala. 234; *Means* v. *Dowd,* 128 U. S. 273. From what has been said, it follows that there is no error in the rulings of the Court upon the several special exceptions of the appellees, to the appellants' prayers.

The appellants' fourteenth and eighteenth prayers should have been refused.

The remaining prayers of the appellant having been granted, we are now to consider those allowed by the Court on behalf of the appellees.

The main legal proposition, contained in all of the prayers on both sides, is conceded. That is, that if the appellant were induced by the fraud of the officers of the corporation to make sale of the goods in question, upon becoming cognizant of the fraud, they had the right to rescind the contract and demand the return of the goods. But the jury in this case would not be warranted in finding there was such fraud, even though the corporation was in fact insolvent, unless its officers at the time of the purchase had no reasonable expectation of making payment at the maturity of the bill. *Powell* v. *Bradlee,* 9 G. & J. 222; *Diggs* v. *Denny, ante,* p. 116.

There were therefore two questions before the jury of the first importance. First, was the corporation insolvent when the purchase was made, and second, if it was, had its officers then a reasonable expectation of being able to make payment when the bill became due.

The first prayer of the appellees instructed the jury that if they found the corporation was insolvent when the purchase was made, yet if its officers had a reasonable expectation to pay the account when due, " based on all its resources, including assets in hand and available, its lines of credit, and money to be realized from the sale of manufactured products, and that," &c. This prayer not only

required the jury to find whether its officers had a reasonable expectation, but it determined for them the basis upon which that was to be decided; they were told it was on the basis of " all its resources, including assets in hand and available, its lines of credit, and money to be realized in the future from the sale of its manufactured products." It was not necessary in determining the question of reasonableness to consider whether the company was able to meet all its obligations to other parties. *Peters* v. *Hilles*, 48 Md. 512. It is easy to understand how a person having in view his business, his assets and his credit, may reasonably expect to be able to pay a claim at a specified time, although in point of fact he would be unable to discharge all his indebtedness. And yet the general indebtedness, and the time or times when it or any part of it becomes due may, indeed must be, an important factor in determining whether such expectation is reasonable or not. This Court in *Peters* v. *Hilles* (*supra*), said that " general indebtedness was a matter that might very properly be considered by them (the jury) in the solution of the inquiry," and we may now add, that if it was proper, it ought to be included in any statement that undertook to instruct the jury as to the basis upon which their decision of the matter must rest. The *gravamen* of the whole inquiry the jury were called on to make, was as to the *bona fides* of the corporation in making the purchase. If it acted honestly, if in the reasonable exercise of an honest judgment, its officers believd it would be able to meet the bill when it matured, it cannot be put on the footing of one who has acted fraudulently. *Diggs* v. *Denny* (*supra*). The prayer would have been wholly free from objection if it had required the jury to find there was a "reasonable expectation," but if it was proposed to instruct as to the "basis" of a reasonable expectation, it is manifestly error to affirm that an expectation based only upon assets and credit, and that utterly ignores the general financial condition of the person, no matter how stringent and pressing it may be, is necessarily a reasonable expecta-

tion. It is entirely possible the general indebtedness may be of such a character and amount, and in part or in whole to mature at such periods, as to stamp any expectation of being able to pay a particular indebtedness at a specified time, as utterly unreasonable. In such a case it cannot be questioned that the general indebtedness would be a most important factor in the consideration of a question whether the expectation of being able to pay the particular account was reasonable or not. In the case at bar the evidence shows the corporation owed large sums of money, and we are of opinion that if it was proposed to instruct the jury as to the basis upon which the alleged expectation rested, they should have been told to consider such general indebtedness as affecting the reasonableness of such expectation. We think therefore there was error in granting this prayer.

The defendant's 5th and 7th prayers were granted properly.

For error in the defendant's first prayer the judgment must be reversed and new trial awarded.

> *Judgment reversed and new trial awarded.*