<hr />

## SOUTHERN TRUST & DEPOSIT CO. v. YEATMAN.

(Circuit Court of Appeals, Third Circuit. February 1, 1905.)

No. 22.

1. CORPORATIONS—STOCK SUBSCRIPTION PAYABLE IN PROPERTY—RATIFICATION OF INFORMAL ACCEPTANCE.

Code Md. 1888, art. 23, §§ 69, 70, amendatory of the general incorporation act of 1868, authorize a corporation organized thereunder to accept in payment for its stock such property "as it is proper that the said corporation shall own for the advancement of the purposes for which it was incorporated," but only where the same shall have been "previously authorized by the stockholders assembled in general meeting, pursuant to a call to consider the propriety of receiving the said subscription." *Held*, conceding such provisions to be applicable to a corporation thereafter created by special act, that where such act expressly authorized the corporation to purchase and hold stocks of other corporations, and the subscribers to its stock, at the meeting at which it was formally organized, accepted a subscription which by its terms was in part payable in the stock of another corporation, and the corporation caused such stock to be transferred to its own name, and held and received dividends thereon for two years, such action was a ratification of the subscription contract which bound the corporation.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, §§ 338–345.]

2. SAME—ACTION TO RECOVER UNPAID SUBSCRIPTION.

A written subscription to the stock of a corporation, which shows on its face that it is payable partly in cash and partly in the stock of another corporation, must be accepted, if at all, in conformity to its terms; and the corporation cannot retain the cash payment, issue the stock, and thereafter maintain an action against the subscriber to recover the difference as an unpaid subscription.

Gray, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 130 Fed. 798.

John G. Johnson, for plaintiff in error.

George W. Pepper, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. The material facts of this case, as disclosed by the evidence, all of which was received without objection, are as follows:

On April 19, 1901, John Sherman, who was soliciting subscriptions to the stock of the Southern Trust & Deposit Company, the

plaintiff below and in error, before the organization of the company, visited John C. Yeatman, the defendant, at Kennett Square, Pa., where he resided, and requested him to subscribe to the stock; and it was then and there agreed between the two that Yeatman would take. 200 shares of the stock, of the par value of $50 each, at $60 per share, and that the company would take in payment $2,600 in cash, and the residue in stock of the Monumental Savings Association of Baltimore, Md., of the par value of $100 per share, at $120 a share. Sherman told Yeatman that it was necessary, as a matter of form, for him to sign a subscription paper to be filed. Thereupon Yeatman signed the subscription paper, a copy of which appears below, and gave to Sherman his check for $2,600, and a certificate for 104 shares of the stock of the Monumental Savings Association; and Sherman signed and gave to Yeatman the receipt, a copy of which appears below. All these things occurred at the same time, and constituted one transaction.

"No. ——.	Shares 200.
"I, John C. Yeatman, of Kennett Sqr., State of Penna., do hereby subscribe for 200 shares of stock of the Southern Trust & Deposit Company of Baltimore, Maryland, duly incorporated by Legislature of the State of Maryland, at the par value of fifty ($50) dollars per share, for which I agree to pay sixty dollars ($60) per share—thirty dollars ($30) per share to be paid when called for, or at the regular organization meeting; and I agree to pay for said stock in three (3) installments as follows: Fifty per cent. (50%) in cash, twenty-five per cent. (25%) in six months, and the remaining twenty-five per cent. (25%) in twelve months after date hereof, ten dollars ($10.00) per share of purchase price to be placed in the surplus account of said company.
"Dated at Kennett Sqr. this 19th day of April, 1901.
"Paid $12,000.	John C. Yeatman.	[Seal.]"

"Kennett Sq. Penna., April 19th, 1901.
"Received of John C. Yeatman, of Kennett Sq., Pa., certificate of stock in the Monumental Savings Association of Baltimore Md., No. of shares (104) and check for twenty-six hundred dollars in full payment of (200) shares of stock of the Southern Trust and Deposit Company of Baltimore, Md., and I agree to return certificate of stock to the said John C. Yeatman for $3,000.00 three thousand dollars of the said Monumental Savings Association of Baltimore, Md., the trust company stock to be issued after the organization meeting.	[Signed]	John Sherman. [Seal.]"

A meeting of the subscribers to stock for the purpose of organizing the plaintiff company was held on June 14, 1901. Most of the subscribers were present, and 652 shares (including Yeatman's), which was more than a majority of the subscribed stock, were represented. By a provision of its charter, the company could do no business until $25,000 of its capital stock were subscribed and paid in. The stock subscriptions did not amount to the required sum unless Yeatman's subscription was counted. There was positive testimony that, after the subscribers had assembled to organize, they were informed as to the terms of Yeatman's subscription, and told that, if there was no objection to accepting the Monumental Savings Association stock as a cash payment by Yeatman on his subscription, a sufficient amount was subscribed to legally organize the company, but if there was any objection they could not organize. No objection was made, and the meeting was called to order and proceeded to organize the company. Immediately thereafter Yeatman's check for $2,600 was

passed to the credit of the company, and the certificate for 104 shares of the Monumental Savings Association stock was delivered to the company. On or before July 13, 1901, the company, acting pursuant to the terms of Sherman's receipt of April 19th, had the 104 shares of the Monumental Savings Association stock divided between the plaintiff company and Yeatman according to their interests; 79 shares being issued to the company, and 25 shares to Yeatman. The memorandum, "Paid $12,000," at the foot of Yeatman's subscription, was written by Sherman, who, upon the organization of the company, became its vice president. The 79 shares of the Monumental Savings Association stock were entered and carried on the books of the plaintiff company as part of its assets; the stock was pledged by the company as collateral for loans; and dividends on the stock were received by the company up to January, 1903. There is a conflict of testimony as to the time when objection on behalf of the company to the transaction in question was first made. The defendant's witnesses say that it was not until the spring of 1903, after the stock had ceased to pay dividends. Mr. Wilcox, who became secretary and treasurer of the company in April, 1902, states that verbal complaint was made to the defendant in June, 1902. The first written demand upon the defendant was contained in a letter dated September 17, 1903, signed by Wilcox, as treasurer of the company. The action in this case to recover so much of the defendant's subscription as was not paid in cash ($9,400) was brought on October 16, 1903.

The plaintiff's alleged right of action rests upon the proposition that by the law of Maryland a subscription payable otherwise than in cash was not allowable, excepting under a vote of the stockholders at a meeting especially called, with notice of a purpose to pass upon the acceptance of such subscription.

The plaintiff relies upon sections 69 and 70 of article 23 of the Maryland Code of 1888, which are substitutes for sections 56 and 57 of the general corporation act passed in 1868 (chapter 471), in these words:

"Sec. 69. Subscriptions to the capital stock of such of said corporations as have capital stock may be made in land or other property at a valuation agreed upon between the corporation and the subscriber, where the said property so subscribed shall be such as it is proper that the said corporation shall own for the advancement of the purposes for which it was incorporated, but such subscription shall not be otherwise received, nor shall they be so received unless the same shall have been previously authorized by the stockholders assembled in general meeting, pursuant to a call to consider the propriety of receiving the said subscription and of fixing the terms upon which it shall be received.

"Sec. 70. Where property of any kind is received by the authority of the stockholders in general meeting as aforesaid, in payment for stock, the books of the company shall be so kept as to show at all times fully what property was received for the said stock, at what value and the number of shares of the capital stock issued for the same; in all other cases money only shall be considered as payment of a subscription to any part of the capital stock."

The defendant in error, however, contends that these sections are not applicable here, for the reasons following. The plaintiff was created a corporation by a special act of the Legislature of Maryland passed on April 5, 1900, entitled "An act to incorporate the Southern

Trust & Deposit Company of Baltimore, Md." Laws Md. 1900, p. 444, c. 299. This act contains eleven sections, defining with much detail the powers of the company, its rights, privileges, and liabilities, and the manner of conducting its business. The third section grants to the corporation authority to purchase and hold stocks, in the words following:

"Sec. 3. That the said body corporate shall have the right to purchase and hold * * * stocks * * * upon such terms as may be established or approved by said company."

Section 11 provides that the corporation shall be subject to certain specified general acts of 1892, but there is no clause of the special act subjecting the corporation to the provisions of the corporation act of 1868, or to the provisions of sections 69 and 70 of the Code of 1888. The act of 1868 contains the provision:

"All corporations heretofore formed under the general laws of this state, relating to corporations, or under any special law, are hereby declared to be entitled to the benefit of and to be subject to all the regulations in this act contained. * * *"

The act of 1868 contains reference to corporations formed thereunder, but there is no express provision therein extending the act to corporations thereafter created by special act of the Legislature. It is urged, therefore, in the brief of the defendant in error, that the above sections 69 and 70 do not apply to this case. The argument in support of this position is impressive, but the point, if made at the trial below, seems not to have been considered by the court. We think, therefore, that we ought not to pass upon the question, and, in the view we take of the case, it is not necessary.

The court below submitted to the jury the question whether there had been a ratification on the part of the plaintiff of the defendant's payment in stock, and the jury found in favor of the defendant. The plaintiff in error insists that there could be no ratification, except by the stockholders assembled in general meeting, pursuant to a call, to consider whether the stock of the Monumental Savings Association should be received in part payment of the defendant's subscription; and, as there was no such ratification, it was error to submit to the jury the question of ratification. In determining this point, great weight, we think, should be given to the third section, heretofore referred to, of the special act of April 5, 1900, creating the corporation plaintiff, which authorizes the corporation to purchase and hold stocks. That section recognizes stocks as property, "such as it is proper that the said corporation shall own for the advancement of the purposes for which it was incorporated," and empowers the corporation to fix the terms of purchase. Therefore the acquisition of Yeatman's stock by the corporation was not ultra vires in the sense that the company had no authority to acquire and hold stocks. Did, then, the failure of the company to comply with the formalities prescribed by section 69 of the Maryland Code before the corporation took Yeatman's stock preclude corporate ratification, except by the stockholders assembled in general meeting pursuant to a special call? We think not. Let us look at the facts of the case. The evidence justifies these findings, namely: That at the

meeting to organize the company a majority in number of the subscribers to stock were present, and a majority of the stock subscribed was represented; that it was then and there stated in open meeting that, unless Yeatman's stock in the Monumental Savings Association was accepted as a cash payment on his subscription, the company could not legally be organized; and that, without objection by any one, the subscribers, with full knowledge of the terms of Yeatman's subscription, proceeded to organize the company. Upon the evidence it may be affirmed that the stockholders convened at this meeting, without dissent, accepted Yeatman's stock as a cash payment. The state of Maryland might have objected to this, but has not done so. The rights of creditors were not involved, and none of them has complained. The only complaint comes from the corporation, which owes its organized existence to the action of the stockholders in treating Yeatman's stock as a cash payment. Moreover, the contract which the plaintiff seeks to have declared illegal is an executed contract. In this regard the case differs widely from Baile v. The Calvert College, etc., 47 Md. 117. Still further, the contract here in question was fully performed on both sides more than two years before this suit was brought. As long as it appeared to the plaintiff to be a profitable bargain, the plaintiff held onto the contract, enjoying its fruits. It was not until conditions had changed, and after it had become impossible to restore the status quo, that the plaintiff undertook to avoid the contract. If the plaintiff ever had that right, it was lost by reason of its conduct. We need not again recount the acts of ownership exercised by the plaintiff over this Monumental Savings Association stock. The plaintiff's positive acts and its long-continued acquiescence preclude it from questioning at this late date the validity of the contract. The plaintiff in error has no reason to complain that the court submitted to the jury the question of ratification. There was ample evidence to sustain the finding of the jury. Stokes & Haines v. Detrick & Bradley, 75 Md. 256, 263, 23 Atl. 846; Edelhoff et al. v. The Horner-Miller Mfg. Co., 86 Md. 595, 610, 39 Atl. 314.

But the case has another aspect: It clearly appears that the defendant never entered into an agreement to pay exclusively in money. In the transaction between him and Sherman, the latter was acting on behalf of a contemplated company. Upon its corporate organization the company could adopt the agreement which Sherman had made, but only upon its agreed terms. Now, the facts are undisputed. As we have already noted, all the evidence in respect to the transaction between Sherman and Yeatman came into the case without objection. We do not see how the evidence could have been excluded. The defendant's subscription had on its face the acknowledgment, "Paid $12,000." This called for explanation on part of the plaintiff. Moreover, the two papers of April 19, 1900, connect themselves together. They constitute the actual agreement. Sherman communicated to the body of subscribers and stockholders assembled for organization the fact that Yeatman was to pay partly in stock, before his subscription was accepted. It follows, then, that, if the stipulation to pay partly in Monumental Savings Association

stock is void, there was no ground for recovery in this action, under the proofs. The corporation is the plaintiff. Now, certainly as between the corporation itself and the defendant, the subscription agreement, if binding at all, was binding in its entirety. Treating it as an unexecuted contract, the corporation cannot demand its enforcement, save upon the agreed terms.

The judgment of the Circuit Court is affirmed.

GRAY, Circuit Judge, dissents.