## In re SYCAMORE GRAIN & MILLING CO.

(District Court, N. D. Ohio, W. D.   June 15, 1914.)

No. 2180.

1. SALES ⬤⟶316—FRAUD—CONCEALMENT OF FINANCIAL CONDITION.

One who, knowing that he is insolvent and without reasonable expectation that he will be able to pay, obtains property on credit from a vendor ignorant of his insolvency, is deemed to have fraudulently acquired such property, and it may be reclaimed by the vendor.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 890–895; Dec. Dig. ⬤⟶316.]

2. SALES ⬤⟶316—FRAUD—CONCEALMENT OF FINANCIAL CONDITION.

Where, at the time a milling company purchased property on credit, it was hopelessly insolvent, and was able to continue business only by reason of extraordinary and unbusinesslike favors extended to it by a bank, and no witness testified that the purchase was in good faith, the facts showed that its manager, who must have known of its insolvency, and whose only expectation that it would be able to pay the bill was that referable to a hope and faith that this unreasonable relation with the bank would be allowed to continue, could not, constructively at least, have entertained an honest expectation that it would be able to meet the obligation at maturity; and hence the seller could reclaim the property from the company's trustee in bankruptcy, especially as otherwise the bank, whose unusual method of doing business gave the milling company a fictitious appearance of prosperity, would receive a dividend from the assets of the milling company, enhanced by such property.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 890–895; Dec. Dig. ⬤⟶316.]

In Bankruptcy. In the matter of the Sycamore Grain & Milling Company, bankrupt. On exceptions to the report of a special master on an application to reclaim property. Exceptions sustained.

Geo. E. Schroth, of Tiffin, Ohio, for trustee.

R. V. Sears, of Bucyrus, Ohio, for Monarch Fence Co.

KILLITS, District Judge. Exceptions to the report of the special master upon the application of the Monarch Fence Company to reclaim a quantity of wire fence sold the bankrupt on an order of May 29, 1913, and delivered early in July of that year, are before the court for consideration; the master having refused the application.

The bankrupt failed about the middle of August, and the evidence shows that in May it was hopelessly insolvent, and was debtor to the Bank of Sycamore in the sum of more than $54,000 upon overdrafts and promissory notes. At this time it bought from the claimant a car load of fence wire, to be paid for on the 1st of January, 1914. It is agreed that the bankrupt had been doing a losing business for some time, and was being held up as a going concern by extraordinary favors rendered it by the Bank of Sycamore, and that its failure was precipitated and made inevitable by the collapse of the bank. The master found the case to be parallel with that of Talcott v. Henderson, 31 Ohio St. 162, 27 Am. Rep. 501, a leading case on the subject, and on the authority thereof denied the application.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The rule, of course, is well settled that one who, knowing that he is insolvent and without reasonable expectation that he will be able to pay, obtains property on credit from a vendor ignorant of the fact of insolvency, shall be deemed to have fraudulently acquired the same, and such property is subject to reclamation. This is the doctrine of Talcott v. Henderson and other cases on the subject.

[2] The insolvency of the Sycamore Milling Company at the time of the purchase was so very plain that knowledge of it must be chargeable to the manager, and the only question of fact to decide is whether the situation was one in which it could be said that the manager, acting for the company in the purchase, could not then have entertained a reasonable expectation that the company could pay for the property at the end of the term of credit. The fact is conceded that the only expectation which the manager could have held that his company would be a going concern on the 1st of January, 1914, and thus be able to pay this bill, was that referable to a hope and faith that the very unreasonable relation his company was permitted to sustain to the Bank of Sycamore would be allowed to continue that long. In other words, his honesty of purpose must be assumed, if it may be said that he could reasonably hope that the bank would continue an unreasonable method of doing business with the mill.

In respect to these matters, the parallel between the case cited (Talcott v. Henderson) and that at bar is very close. In fact, the insolvent in the state case was both more hopelessly insolvent and the recipient of more extraordinary favors from its principal creditor than even in the case before us, and yet it was held in Talcott v. Henderson that the situation was such as not to permit the court to say that the insolvent purchasing the goods in that case had no reasonable expectation of liquidating the indebtedness thus created.

However, there is a very important distinction between the two cases, one which the master quite evidently overlooked. It is apparent that in Talcott v. Henderson the insolvents were represented in the testimony by a witness or witnesses who were active in the purchase of the property in question, and who were able to testify and did testify to an honest purpose at the time and a real expectation held by them that their business would continue, which testimony was sufficient to overcome the inferences entertainable because of the bare facts. The court say, on page 166, of 31 Ohio St. (27 Am. Rep. 501):

"At the date of the contract, De Forrest & Son were largely insolvent. They had knowledge of the fact, and did not disclose it to the plaintiff, who was ignorant of it. They were also in possession of a large stock of merchandise, and were doing an extensive business. From these facts, it might well be inferred that they intended to obtain the plaintiff's goods without paying for them; at least, that they had no reasonable expectation of being able to pay for them at the maturity of their promise. If the court below had so found, we would not disturb the finding; and, for aught that appears, the court would have so found, if no other fact had appeared in the case. But there was other testimony, tending to prove that De Forrest & Son did in fact intend to pay for the goods according to the terms of their agreement, and that under all the circumstances they might reasonably have expected to be able to do so. It is quite sure that they could not reasonably have expected to be able at that time to pay all their indebtedness; but, in our opinion, it was not essential to the good faith of the transaction that there

should have been reasonable grounds for the latter expectation. It was enough, if they reasonably expected to be able to pay for the goods in question at maturity."

The case before us is one which on the facts stops abruptly at the point where the court says, in Talcott v. Henderson, that such facts, unexplained, will be sufficient to suggest that no reasonable expectation of meeting the obligation could possibly have been entertained, for no one representing the insolvent, active in the purchase of this fence wire, testifies, and there is no evidence tending to rebut the presumption, which every prudent business man must entertain, that this purchase was not in good faith on the part of the milling company, having reference only to its hopeless condition of insolvency and the fact that it could only hope to be alive as a going concern at the time of the maturity of the credit through the continuance of an extraordinary and utterly unbusinesslike favor on the part of the bank.

In Edelhof v. Horner-Miller Manufacturing Co., 86 Md. 595, 39 Atl. 314, the court says:

"An expectation of a company to meet a bill, based only upon assets and credit, and that utterly ignores the general financial condition of the company, no matter how stringent and pressing it may be, is not necessarily a reasonable expectation of ability to pay. It is entirely possible the general indebtedness may be of such a character and amount, and in part or in whole to mature at such periods, as to stamp any expectation of being able to pay a particular indebtedness at a specified time as utterly unreasonable."

It is quite plain that if the court had only the settled principle before it announced at the beginning of its opinion, without the precedent of Talcott v. Henderson, and nothing of fact to pass upon but the milling company's condition at the time the order was given, considered in the light of the very unusual support given to it by the bank, we would be compelled to say that it could not, constructively at least, have entertained an honest expectation that it would be able to meet this obligation at maturity. The distinction we have drawn between the record in this case and that evidently before the court in Talcott v. Henderson is a controlling one, and we believe the master erred in refusing the application, and that the exceptions should be sustained.

The fact that the trustees of the Bank of Sycamore hold an extraordinarily large proportion of the claims against the bankrupt, and that it was the bank's unusual method of doing business with the milling company which gave the latter a fictitious appearance of business prosperity, is a factor, although not at all controlling, in the court's judgment. It would seem inequitable that the bank or its trustees in bankruptcy should be permitted to enjoy a dividend upon assets of the milling company enhanced under these circumstances.